JAMES A. CARRIGER *v.* MAYOR AND ALDERMEN OF TOWN OF MORRISTOWN.*

(*Knoxville.* September Term, 1923.)

1. **PLEADING.** In petition for review of assessment, allegation that valuation was ''fictitious, illegal, exorbitant, and oppressive'' held mere conclusion.

Petition for writs of *certiorari* and *supersedeas* for review of assessment for paving purposes under Private Acts 1911, chapter 501, alleging that defendant assessed petitioner's property at $1,866 when in fact it was worth only $600, and that this valuation was "fictitious, illegal, exorbitant, and oppressive," *held* insufficient to give the circuit court jurisdiction, under Shannon's Code sections 4853, 4854, 6063, 6072, in the absence of allegations that defendant exceeded its jurisdiction, or in any manner violated the statute, or that the defendant, or the improvement commissioners, acted fraudulently, arbitrarily, or in bad faith in fixing the value on petitioner's property, since the petition, in absence of such allegations, pleaded a mere mistake of judgment, not reviewable on *certiorari;* the quoted allegation being a mere conclusion. (*Post, pp.* 595-602.)

Acts cited and construed: Priv. Acts 1911, ch. 501.

Cases cited and approved: Town of Morristown v. Hamblen County, 136 Tenn., 251; Arnold v. Knoxville, 115 Tenn., 195; Staples v Brown, 113 Tenn., 639; Tonawanda v. Lyon, 181 U. S., 389; Springfield v. Sale, 127 Ill., 359; Montgomery v. Moore, 140 Ala., 638; Coates v. Nugent, 76 Kan., 556; Ludlow v. Cincinnati So. R. Co.,

---

*On question of power to impose special assessments, see note in 28 L. R. A. (N. S.), 1126.

For discussion of the principles governing the interposition of the courts, see note in 28 L. R. A. (N. S.), 1151.

For authorities discussing the question as to whether a special assessment is a tax, see note in 3 L. R. A. (.N S.), 837.

78 Ky., 357; Louisville v. Bitzer, 115 Ky., 359; Smith v. Worchester, 182 Mass., 232; Railway Co. v. Barber Asphalt·Paving Co,. 197 U. S., 433; Pittsburg, etc., R. Co. v. Taber, 168 Ind., 419.

Cases cited and distinguished: Smith v. Carter, 131 Tenn., 7; French v. Barber Asphalt Paving Co., 181 U. S., 324; Tomlinson v. Board of Equalization, 88 Tenn., 1.

Codes cited and construed: Secs. 4853-54, 6063-72 (S.).

2. **MUNICIPAL CORPORATIONS.** Special Assessment exercise of sovereignty.

The levy of a special assessment is similar to the levy of an ordinary tax, and is the exercise governmental sovereignty. (*Post, pp.* 602, 603.)

3. **MUNICIPAL CORPORATIONS.** Assessments not reviewable for mere error of judgment.

A special assessment cannot be reviewed by the courts where no principle of law is violated in making it, and the complaint is simply of an error of judgment, since the levy of an assessment is not a judicial act or a judicial proceeding which gives the owner the right to have the courts pass on the matter and substitute their judgment for that of the assessment tribunal or body. (*Post, pp.* 602, 603.)

4. **TAXATION.** Action of assessing board reviewable where statute not complied with.

If assessing board or tribunal does not comply with the statute, its action is subject to review by *certiorari*. (*Post, p.* 603.)

Case cited and approved: Louisville & N. R. Co. v. Bate, 80 Tenn., 573.

5. **TAXATION.** Levy of tax under illegal act reviewable.

*Certiorari* may be invoked to review the levy of a tax under an illegal act. (*Post, p.* 603.)

Case cited and approved: Friedman Bros. et al. v. Mathes, 55 Tenn., 488.

6. **MUNICIPAL CORPORATIONS.** Correction of description of lot assessed for improvement held proper.

Where owner of land abutting on street in petition for creation of improvement district under Private Acts 1911, chapter 501, requested that the entire lot be included in the district, but the engineer in preparing the plat of the district cut the lot into two parts, and included only one-half thereof in the district, the correction of the description of the lot after assessments had been made so as to include the whole of the lot, instead of one-half of it, *held* proper under section 24, since the change was merely the correction of an error, and was neither a reassessment on or a supplemental assessment of the owner's property. (*Post, p.* 604.)

FROM HAMBLEN.

Appeal from the Circuit Court of Hamblen County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JAS. L. DRINNON, Judge.

JAMES A. CARRIGER and W. T. COLEMAN, for Carriger.

RUFUS M. HICKEY, for Mayor & Aldermen.

MR. JUSTICE HALL delivered the opinion of the Court.

James A. Carriger, who will hereinafter be referred to as petitioner, filed petitions in the circuit court of Hamblen county to have brought into that court for review the action of the mayor and aldermen of the town of Morristown, who will hereinafter be referred to as defendant, in assessing his property abutting on Daisy street in the

town of Morristown, for paving purposes under chapter 501 of the Private Acts of 1911.

Petitioner, on June 18, 1919, signed a petition addressed to defendant requesting it to create improvement district No. 16 in the town of Morristown under and by virtue of chapter 501 of the Private Acts of 1911, being a paving act applicable to Morristown.   This petition stated that—

"We, the undersigned subscribers to this petition, being the owners in fee simple of the real estate described and set opposite our names, respectively, in the schedule hereto attached, and made a part of this petition, do hereby respectively petition the board of mayor and aldermen to lay off and create as improvement district No. 16, under authority of chapter 501, Private Acts of the General Assembly of the State of Tennessee for 1911, as amended, . . . and in consideration of said improvements in said district, we, and each of us, do hereby promise and agree to pay in ten equal annual installments, as in the manner provided for in said act, as amended, our *pro rata* share of three-fourths of the cost of said street improvement, according to frontage and value, except the cost of certain excavations, fillings and gradings, chargeable against the town of Morristown, as provided for in said act."

Section 2 of the act in question expressly requires that the petitioners shall, in a schedule attached to the petition, designate their lots or parcels of land abutting on the street to be improved.

In this schedule petitioner described his lot, against which he consented for paving assessments to be levied, as fronting two hundred and thirty-five feet on Daisy street, and bounded on the north by Sixth North street,

south by W. C. Pettigrew, east by James street, and on the west by Daisy street.

We think, before stating and discussing the questions presented for determination, it would be proper to refer more specifically to the act under which said street paving was to be done.

Section 1 of the act provides that the owners of sixty-one per cent. of the frontage of the lots or parcels of land abutting on said street or highway within said proposed improvement district may file a petition with the board of mayor and aldermen requesting the establishment of the improvement district, and this petition shall state that petitioners agree to pay their proportion of the costs and expenses of said improvement.

Section 3 provides that, upon the filing of said petition, action shall be taken thereon by a resolution or ordinance of the legislative body of said town. If the said petition shall appear to be signed by persons or corporations, or a person or corporation, owning sixty-one per cent. of the frontage of the real estate abutting on said street or highway, or the portion thereof proposed to be improved, the petition shall be granted and the improvement district applied for shall be established, unless the legislative body of said city or town shall be of the opinion that:

(1) The required number of signatures are not genuine.

(2) The petition was gotten up or signatures procured by a paving company or by a person expecting to become a bidder for all or any part of the work or by an agent or employee of any such company or person.

(3) The part of the cost of the proposed improvement to be borne by the city, including damage on account of grading or change of grade, as well as any other damages

whatsoever, will be greater than will be justified by the public necessity.

(4) The part of the cost chargeable upon abutting property will be so out of the proportion of the value of such property as to be unjust to owners in signing the petition. (5) And the public necessity does not require said improvement, or that the financial condition of said city or town is such as not to warrant the expenditure by said city or town of that part of the cost of said improvement which should be chargeable to the municipality.

Section 11 provides that, if said petition for the establishment of an improvement-district be granted, the legislative body of said city or town shall cause all necessary surveys and maps to be made by the city or town engineer, and shall cause a notice to be published in a newspaper published in said city or town, at least five days before said matter is acted on, notifying all interested property owners that the board will at said meeting consider the character of material to be used in making the improvement, the cost to the city, and to the abutting property owners, and the advisability of going further with the matter; and at this meeting all interested property owners are invited to be present and are given an opportunity to be heard. At this meeting the board finally determines whether it will create the improvement district, and, if, after due consideration it decides to establish it, an ordinance is passed establishing the district, and determining the character of material to be used, and authorizing the letting of contracts, etc.

By sections 12, 13, and 16 it is provided that, pursuant to proper publication, the contracts for the work are awarded, or the city may decide to do the work itself, and

after the work is completed it is provided by section 14 of the act that the city engineer shall file his report, in which shall be set out the total cost of the improvement, with the amount chargeable against the city, and also the amount chargeable to and to be assessed against each property owner.

Section 24 provides:

That, after this report has been filed, the board shall appoint not less than three nor more than five improvement district commissioners, to be selected from the owners of the lots or parcels of land abutting on the street or highway, or part thereof constituting the improvement district, but said improvement district commissioners shall serve without compensation. That it shall be their duty to make lists, levy, or assessment rolls of the lots or parcels of land abutting on said street or highway constituting said improvement district, together with a description of said lots or parcels of land, with the names of the owners and the value of each of said lots, without taking into consideration the improvements thereon.

That all interested parties may appear before the legislative body of said city or town under the notice and at the meeting provided for in section 14 of said act, and show cause, if any they can, why the list and value made and fixed by said commissioners shall not be confirmed and made final by said legislative body. The legislative body may reject said list and values made and fixed by said commissioners, and recommit them to said commissioners for further or different report, or said legislative body may adopt said report as submitted, or amend, modify and change the same as shall seem just and right, and then adopt said report as amended, modified, and changed

by resolution or ordinance duly passed and entered on the minutes of the proceedings of said body. Upon the adoption of said report, either as originally submitted, or as amended, the said legislative body shall by a like resolution fix and determine the levy or assessment to be charged upon each of said lots or parcels of land in the manner and on the basis in said act provided; provided, however, that any error, mistake of name of owner, number, or description of lot or parcel of land, amount, or other irregularity may at any time be corrected; and no such levy or assessment shall ever be declared void or invalid by reason thereof. The act nowhere provides for an appeal by any of the interested property owners from the action of the district improvement commissioners and defendant assessing their properties for the improvement to be made.

It is admitted by all parties that improvement district No. 16 in the town of Morristown was established under the provisions of the foregoing act, and there is no claim made by petitioner that the proceedings for the establishment of said district were not regular in all particulars. It appears that, as provided by said act, three improvement district commissioners were appointed from the owners of the lots or parcels of land abutting upon the streets embraced within said district, whose integrity petitioner does not question, and who went upon the property and valued the same, and filed a report. In this report petitioner's property was valued at $12 per front foot, aggregating $2,799, and said commissioners stated that in fixing said values they reported the values of the several lots or parcels of land exclusive of the improvements thereon, as provided by said act. This report was

filed May 6, 1921, and, as provided by statute, notice
was given by defendant to all interested property owners
that it would, on May 30, 1921, proceed to levy assessments
upon the abutting property in improvement district No.
16, as provided by chapter 501, Private Acts of 1911.

At the hour stated in the notice petitioner appeared be-
fore the board and filed a written exception to the valua-
tion placed on his property by said improvement commis-
sioners, stating that his lot had been assessed by said com-
missioners at $2,799, which was vastly more than the value
of the same, its value being not more than $600.

After consideration by the board of petitioner's ex-
ception, the valuation placed upon his lot by the improve-
ment commissioners was reduced from $2,799 to $1,866,
and the report of the commissioners was amended accord-
ingly; and, after passing on a number of other exceptions
made by the interested property owners, the report of the
commissioners, as amended, was ratified and confirmed.

Thereupon defendant proceeded to levy a paving tax
against said properties embraced in said improvement
district, in accordance with said valuations, and the pav-
ing tax levied against petitioner's property was $446.50,
which was twenty-five per cent. of its assessed value, as
fixed by defendant at its meeting on May 25, 1921.

Whereupon, petitioner made the following exception,
which he asked to be spread on the minutes of defendant:

"The undersigned, James A. Carriger, excepts to the
value placed on his parcel of land abutting on the North-
eastern side of Daisy street in improvement district No.
16, by the mayor and aldermen of the town of Morristown,
to-wit, the sum of $1,866, and levying a paving tax on same
at $2 a front foot, amounting to $446.70, when the value

of said parcel of land is not in excess of $600, and when the tax levy on same is limited by statute to one-fourth of the value of said lot, to-wit, $150; said valuation and tax levy are both exorbitant and illegal."

It does not appear that petitioner offered any proof before defendant to support his exception, which was unsworn to, or to show that the valuation and paving tax placed and levied on his property were excessive, which he had the right to do under section 24 of said act, but on June 13, 1921, filed his petition for writ of *certiorari* in the circuit court of Hamblen county, in which it was alleged, in substance, that fully two-thirds of his lot assessed by defendant for street paving purposes lies in a basin from six to ten feet below the level of Daisy street, and from eight to twenty-two feet below the level of Sixth street, which bounds it on the southwest, and that its value is greatly reduced by reason of the fact that the adjacent landowner has built within six feet of petitioners' line a cheap tenement house, and also by reason of the fact that colored people own land immediately across Daisy street from the lot of petitioner; also that his said lot is far removed from the business portion of Morristown, and is only suitable for agricultural purposes; that therefore his said lot is not worth exceeding $600, and that the paving tax levied against it should not be in excess of $150, which amount would be twenty-five per cent. of its value; that the value of $1,866 placed upon said lot by defendant and the paving tax of $466.50 levied against said lot are "fictitious, exorbitant, illegal, and oppressive."

The petition contained the usual prayer for writs of *certiorari* and *supersedeas* to bring the assessments into

the circuit court for review, which writs were issued in accordance with the prayer of the petition.

Subsequently petitioner moved the court to be permitted to amend his petition so as to allege that defendant, for the year 1919, assessed his entire lot for taxation for general municipal purposes at $450, and for the year 1920 at $630, and for the year 1921 at $750; that the one-half of said premises abutting on James street was and is substantially equal to that half abutting on Daisy street; that these valuations were ratified by defendant, wherefore defendant estopped itself to assess that half of petitioner's lot abutting on Daisy street for paving purposes at $1,866 and such estoppel was expressly pleaded and relied upon.

It appears that before this petition was filed by petitioner it was discovered by defendant that its engineer, in preparing the plat of said improvement district, had cut the lot of petitioner half in two, and that the improvement district commissioners had described said lot in their report as fronting two hundred and thirty-three feet on Daisy street, and bounded on the north by Sixth North street, south by Pettigrew, east by Carriger, and on the west by Daisy street, and the depth of said lot as being one hundred and fifty-six feet, and that the improvement district commissioners assessed the lot in accordance with the plat made by the engineer; that is, one-half of said lot was valued at $2,799, which assessment was reduced by defendant to $1,866, as before stated.

In the petition to defendant, which was signed by petitioner, requesting the establishment of the district, petitioner had not subdivided his lot, but had described it as a whole. Therefore, defendant gave petitioner notice

that it would, under the authority conferred upon it by section 24 of the act, correct the error in the description so as to make the assessment cover the entire lot as described in the petition addressed to defendant requesting the establishment of said district instead of one-half of said lot.

Petitioner appeared on the day stated in said notice and filed exceptions to the action of defendant in attempting to correct this error, which exceptions were ordered filed, after which the error made was corrected; this correction, however, being made after petitioner's first petition for writs of *certiorari* and *supersedeas* had been filed in the circuit court.

Thereupon petitioner filed in the circuit court of Hamblen county his second petition for writs of *certiorari* and supersedeas to have reviewed this action of the defendant, alleging in said petition that the action of defendant amounted to a supplemental or reassessment of his said property for paving purposes, which was beyond the authority and power of defendant, and that its action in this particular was void.

Defendant filed a motion to dismiss the first petition of petitioner, as amended, because:

(1) It is not averred in said petition that either the improvement district commissioners or defendant, in fixing the value of petitioner's property, acted fraudulently or corruptly, but that the only averment contained therein challenging the legality of the action of said commissioners and defendant was that the said commissioners and defendant erred in their judgment as to the value of said property, and therefore petitioner was not entitled to have said assessments reviewed by *certiorari*, or otherwise.

(2) That the value finally placed on petitioner's property was $1,866, and that the paving tax levied against it was $466.50, which amount was not in excess of twenty-five per cent. of the assessed value of said property.

(3) That the assessment of petitioner's property for municipal taxes did not control the values fixed upon said property for street paving purposes.

(4) That petitioner did not avail himself of the privileges provided by the act at the time when interested property owners had the right to appear before the board and show cause, if any they could, why the assessments made and fixed should not be confirmed and made final by defendant.

Thereafter petitioner moved the court to be permitted to further amend his petition so as to allege that, after the improvement district commissioners had filed their report with defendant, two of them admitted to petitioner that the valuation of $2,799 placed on petitioner's property was too high. This motion, however, was by the court disallowed.

Petitioner moved to amend his second petition for writs of *certiorari* and *supersedeas* so as to set up the same matter incorporated in the amendment to his first petition with respect of the assessment of his property by defendant for taxation for general municipal purposes, and to plead and rely on said action by defendant as an estoppel in the present action. This amendment was by the court allowed.

Thereupon defendant moved to quash and dismiss the writs of *certiorari* and *supersedeas* issued under the second petition upon the ground that the correction of the

description of petitioner's lot so as to include his entire lot in said improvement district was in accordance with the petition which he addressed to defendant, and was authorized by section 24 of the act under which said improvement district was established, and was in no sense a reassessment, or a supplemental assessment, of his property as alleged by petitioner.

The circuit judge sustained the motions of defendant and dismissed said petitions.

Petitioner appealed to the court of civil appeals. That court reversed the judgment of the circuit court, and remanded the cases to the circuit court for further proceedings.

The cases are now before this court for review upon writs of *certiorari* sued out by defendant.

The court of civil appeals was of the opinion that the action of the circuit court in quashing and dismissing petitioner's first petition for writs of *certiorari* and *supersedeas* was erroneous because petitioner was entitled, as a matter of law, to have the assessed valuation placed on his property by defendant reviewed by the courts, and the act under which said improvement district was established not providing for any appeal from the action of defendant in assessing petitioner's property, his only remedy was to sue out writs of *certiorari* and *supersedeas* in the circuit court.

No reason is given by the court of civil appeals for reversing the judgment of the circuit court on the second petition; in fact, the second petition is merely referred to in the opinion of the court of civil appeals; the question involved on that petition not being discussed at all.

"The circuit courts of this State are courts of general jurisdiction, and the judges thereof shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal. . . .

"They have an appellate jurisdiction of all suits and actions, of whatsoever nature or description, instituted before any inferior jurisdiction, whether brought before them by appeal, *certiorari,* or in any other manner prescribed by law."

Shannon's Code, sections 6063 and 6072.

They may grant writs of *certiorari* "whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

"*Certiorari* lies: (1) On suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal: (4) instead of *audita querela;* (5) instead of writ of error."

Shannon's Code, sections 4853 and 4854.

The averments of petitioner's first petition are that defendant assessed his property at $1,866, when, in fact, it is only worth $600; that this valuation was "fictitious, illegal, exorbitant, and oppressive."

This latter statement must be treated as a mere conclusion. It is nowhere alleged in the petition that defendant exceeded the jurisdiction conferred on it, or in any manner violated the statute under which it was acting when it assessed petitioner's property. The allegations of the petition are, in effect, that there was an error of judgment on the part of the defendant when it fixed the

value of petitioner's property at $1,866. The petition no-where alleges that either the district improvement com-missioners or defendant acted fraudulently, arbitrarily, or in bad faith in fixing the value they did upon petition-er's property.

In the case of *Mayor and Aldermen of the Town of Mor-ristown* v. *Hamblen County,* 136 Tenn., 251, 188 S. W., 796, it was held by this court that special assessments fall under the taxing power of the government.

In *Smith* v. *Carter,* 131 Tenn., 7, 173 S. W., 432, it is said: "All the authorities hold that special assessments are a form of taxation. This point was specially con-ceded in the majority opinion in the case of *Arnold* v. *Knoxville,* 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881."

Judge Cooley, in his work on Taxation (3d Ed.) vol. 2, p. 1181, says: "That these assessments are in exer-cise of the taxing power has over and over again been affirmed until the controversy must be regarded as closed."

To the same effect is the rule announced in 25 R. C. L., 85.

In the note to 28 L. R. A. (N. S.), 1129, authorities from practically all the States of the union are reviewed. They all hold that the levying of special assessments is simply the exercise of the taxing power.

In *French* v. *Barber Asphalt Paving Co.,* 181 U. S., 324, 21 Sup. Ct., 625, 45 L. Ed., 879, it was said: "The prompt payment of taxes is always important to the public wel-fare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreasonable. If the laws here in question involved any wrong or unnecessary harshness, it was for

Congress, or the people who make congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government."

The court further says in its opinion in that case:

"Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which in regard to that matter, is and always has been due process of law. . . . It is alleged, and probably with truth, that the estimate of the value of the land for taxation is very greatly in excess of its true value. Whether this be true or not we cannot here inquire. We have so often decided that we cannot review and correct the errors and mistakes of the State tribunals on that subject, that it is only necessary to refer to those decisions, without a restatement of the argument on which they rest"—citing numerous cases.

The court further said: "The lands might have been benefited by the improvement, and so the legislative determination that they were, and to what amount or proportion of the cost, even if it may have been mistakenly unjust, is not open to our review. The question of special benefit and the property to which it extends is of necessity a question of fact, and when the legislature determines it in a case within its general power, its decision must of course be final. We can see in the determination reached possible sources of error and perhaps even of injustice, but we are not at liberty to say that the tax on the property covered by the law of 1881 was imposed without reference to special benefits. . . . The precise wrong of which com-

plaint is made appears to be that the landowners now assessed never had an opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation. The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confided to its jurisdiction. It may err, but the courts cannot review its discretion."

In *Tomlinson* v. *Board of Equalization,* 88 Tenn., 1, 12 S. W., 414, 6 L. R. A., 207, Tomlinson sought to have reviewed the action of the board of equalization in fixing the value on his property for the purposes of taxation just as petitioner is seeking in this case to have reviewed the act of the defendant in fixing the value of his property for the purpose of a special assessment. In that case the court said:

"The next contention is that petitioner has the right to have the writ of *certiorari,* to the end that he may have the matter heard or retried upon the merits. This is based upon the proposition that, if the board had heard witnesses, or had decided the matter without witnesses, and upon their own knowledge, or upon a comparison of the assessment complained of with other assessments, that in any event their action in adopting and approving the assessment is a judgment, which they are entitled to have reviewed upon the merits; and that, inasmuch as it is a

case where no appeal lies, for this reason the writ of *certiorari* lies to review and retry the matter upon its merits. The answer to this is, that it is only where the writ of *certiorari* lies as a substitute for an appeal or a writ of error, or possibly instead of *audita querela,* that the writ will operate to give to the petitioner a new trial upon the merits. In the first place, the act, as we have before seen, expressly declares that the action of the board shall be final. The lawmaker did not intend that its judgment on the merits should be subject to review. In all such cases the writ will not lie to review the matter upon the merits. Such controversies must be finally settled by some means. The judgment of a disinterested board of freeholders upon a mere matter of opinion as to valuations for taxation is as likely to be right as that of any court. Says Judge COOLEY upon this question: 'As a general rule, a tax cannot depend for its validity upon the ability to justify it to the satisfaction of a court or jury. Value is a matter of opinion, and when the law has provided officers upon whom the duty is imposed to make valuation, it is the opinion of these officers to which the interests of the parties are referred. The court cannot sit in judgment upon their errors, nor substitute their opinions for the conclusions the officers of the law have reached.' "

The holding of the court in *Tomlinson* v. *Board of Equalization* on the right of a dissatisfied property owner to have the action of such board reviewed, where the question is simply one as to the correctness of the judgment of the board, was approved by this court in *Staples* v. *Brown,* 113 Tenn., 639, 85 S. W., 254.

In 25 R. C. L., 140, it is said: "So it has often been held that the determination by a city council under prop-

er legislative authority that certain property will be benefited by a local improvement is usually conclusive and not open to question before the court. If it appears that the city council has exercised an honest discretion in determining this question of policy, however much it may have erred in judgment, the remedy is at the polls in choosing a new council, and not by reviewing its proceedings in the courts. If the courts were invested with authority to review these questions of policy, but few assessments could ever be collected without an action, and the adjudication of purely legislative questions would be substituted for the discretion of a city council."

Again, on page 160, section 74, it is said: "As already seen, there are many decisions to the effect that the legislature has the power to determine, by the statute imposing the tax, what lands which might be benefited by the improvements are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts. . . . If the owner of the lands has by provisions of the statute, and before his lands were finally included in an assessment district, an opportunity to be heard before a proper tribunal upon the question of benefits, the decision of such a tribunal, in the absence of actual fraud and bad faith, will be conclusive of that question."

Judge Cooley, in his work on Taxation, vol. 2 (3d Ed.), p. 1258 says:

"When the estimate of benefits is referred to assessors, by whatever name they may be called, the rule of conclusiveness here stated must apply to their action. The remedy of one who considers himself unfairly assessed is to apply for redress to the statutory tribunal, if one is pro-

Carriger v. Mayor, etc., of Morristown.

vided with the power to review. In all collateral proceedings the benefits assessed are conclusively presumed to be received, and the assessment is not open to revisal or review.

"The broad latitude of legislative and administrative discretion in these cases undoubtedly opens the door to many abuses, and it may be a reason for carefully criticising the proceedings, in order to see that the law has been strictly observed, but it can constitute no reason for the judiciary's taking upon itself the correction of legislative mistakes and errors of judgment."

Judge COOLEY again says on page 1382: "But for a merely excessive or unequal assessment where no principle of law is violated in making it, and the complaint is of an error of judgment only, the sole remedy is an application for an abatement either to the assessors or to such statutory board as has been provided for hearing it. The courts either of common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so."

Judge COOLEY, in speaking of the writ of *certiorari,* on page 1403, says:

"The writ is not awarded to review political action, and, therefore, the action of a town or any other municipality, or of any of the local boards, in determining upon the purposes for which taxes shall be levied, or the time and manner of levying them, when that is committed to their judgment, or fixing upon the sums to be levied, or the objects of expenditure, or anything of a like nature is not subject to review by means of it. . . . It will not lie to review any merely discretionary action of any

tribunal; nor is it within the proper scope of the writ to review the decisions of inferior tribunals on the merits."

Judge COOLEY then sums up the conclusions as follows:

"The following conclusions are deduced by the authorities from these general principles: That the writ does not lie to the collector of taxes or any other mere ministerial officer to review either his action or any of the prior action on which his was based; that assessments cannot be revised and set aside on this writ on the ground merely that they are excessive or unequal; or that the assessors have erred in any matter of judgment, or have been guilty of irregularities in the exercise of their authority, not being of a nature to deprive them of jurisdiction or to take from the party complaining any substantial right. The discretionary action of a county board in equalizing the assessments of the county, like the assessments themselves, is not subject to review on this process."

To the same effect are the cases of *Tonawanda* v. *Lyon,* 181 U. S., 389, 21 Sup. Ct., 609, 45 L. Ed., 908; *Springfield* v. *Sale,* 127 Ill., 359, 20 N. E., 86; *Montgomery* v. *Moore,* 140 Ala., 638, 37 South., 291; *Coates* v. *Nugent,* 76 Kan., 556, 92 Pac., 597; *Ludlow* v. *Cincinnati Southern R. Co.,* 78 Ky., 357; *Louisville* v. *Bitzer,* 115 Ky., 359, 73 S. W., 1115; *Smith* v. *Worchester,* 182 Mass., 232, 65 N. E., 40, 59 L. R. A., 728; *Railway Co.* v. *Barber Asphalt Paving Co.,* 197 U. S., 433, 25 Sup. Ct., 466, 49 L. Ed., 819; *Pittsburg, etc., R. Co.* v. *Taber,* 168 Ind., 419, 77 N. E., 741, 11 Ann. Cas., 808, 28 L. R. A. (N. S.), note, 1152, 1153.

We think the foregoing authorities are sufficient to demonstrate the fact that the levy of a special assessment is similar to the levy of an ordinary tax, and is therefore the exercise of governmental sovereignty. And such an

assessment cannot be reviewed by the courts where no principle of law is violated in making it, and the complaint is simply of an error of judgment only. The levy of an assessment for taxes is not a judicial act, or a judicial proceeding, which gives to the property owner the right to have the courts pass upon the matter and substitute their judgments for that of the assessing tribunal or body. .

If the assessing board or tribunal does not follow the provisions of the statute, its action is subject to the revisory jurisdiction of the courts, invoked by *certiorari. Louisville & N. R. Co.* v. *Bate,* 12 Lea, 573.

Also *certiorari* may be invoked to review the levy of a tax under an illegal act. *Friedman Bros. et al.* v. *Mathes,* 8 Heisk., 488, 489.

But when the assessing board or tribunal acts within its jurisdiction and powers, and not fraudulently and in bad faith, in making assessments or fixing valuations on property, though it may err in its judgment, the writ of *certiorari* cannot be invoked to revise its action.

There is no charge of fraud and bad faith in the case under consideration, nor is there any charge that defendant exceeded its jurisdiction or violated any law in assessing petitioner's property. It is not charged that defendant fixed a valuation upon petitioner's property that it did not believe was a true and correct one. The effort of the petition is simply to have the court substitute its judgment as to what should be a proper valuation on petitioner's property for that of the assessing officers. This the court cannot do. Petitioner was given the right under section 24 of the act to appear before the defendant and introduce proof and show that the assessment against his

property was excessive, if he could do so, and have the same reduced. This he did not attempt to do. He was content to file a simple exception to the action of the board and then proceeded to file his petition for writs of *certiorari* and *supersedeas* to have the defendant's action reviewed.

We are of the opinion that the second petition filed by petitioner on June 27, 1921, presents no ground authorizing the courts to review the action of defendant in correcting the description of the lot assessed, so as to include the whole of it instead of one-half of it. This was neither a reassessment on or a supplemental assessment of his property. It was merely a correction of an error, which correction was authorized by section 24 of the act. This correction simply conformed to the petition addressed by petitioner to defendant requesting that his entire lot be included in said improvement district, and consenting that it might be assessed for street improvement purposes. Petitioner had not subdivided his lot in the petition addressed to defendant, and defendant had no authority under the act to subdivide it. It was therefore proper for defendant to correct the description so as to include the entire lot.

It results that the judgment of the court of civil appeals will be reversed, and that of the circuit court is affirmed, with costs against petitioner.