MOSSY CREEK BANK *v.* JEFFERSON COUNTY *et al.**

(*Knoxville.* September Term, 1925.)

1. **TAXATION.** Court of chancery has no jurisdiction of bill for refund of tax on land owned by bank for which no allowance was made on assessment of capital stock, where bank failed to appeal from county equalization board refusing relief (Shannon Annotated Code, Sections 802a4, 802a11, 807a12, 790, 790a1, 790a2).

Under Shannon Annotated Code, sections 802a4, 802a11, conferring jurisdiction to equalize assessment on county board of equalization, and section 807a12, authorizing appeal to State board of equalization, court of chancery had no jurisdiction of bill seeking refund of tax paid on land, on ground that land was owned by bank and no allowance was made therefor in assessing capital stock, as provided under sections 790, 790a1, and 790a2, where bank failed to appeal from order of county board of equalization after relief was refused. (*Post, p.* 339.)

Acts cited and construed: Acts 1907, ch. 602, sec. 32.

Codes cited and construed: Secs. 802a4, 790a1, 790a2 (S.).

2. **TAXATION.** Assessment on land owned by bank, with no allowance therefor on assessment of capital stock, involves excessive assessment on capital stock, within jurisdiction of county board of equalization, and not double taxation (Shannon Annotated Code, Sections 790a2, 802a11).

Assessment on land owned by bank with no allowance on assessment of bank's capital stock therefor, in accordance with Shannon's Annotated Code, section 790a2, involved an excessive assessment of bank's capital stock, within jurisdiction of county board of equalizers under section 802a11, and not double taxation. (*Post, p.* 339.)

Mossy Creek Bank v. Jefferson Co.

3. **TAXATION.**

County board of equalization is a *quasi*-court, and it was duty of one applying to it for relief, and desiring to appeal if relief was denied, to keep itself advised of board's conclusion. (*Post, pp.* 339-347.)

Acts cited and construed: Acts 1897, ch. 1.

Cases cited and approved: Briscoe v. McMillan, 117 Tenn., 132; Staples v. Brown, 113 Tenn., 639; Carriger v. Morristown, 148 Tenn., 606; Bank v. Memphis, 107 Tenn., 66; East Livermore v. Livermore, etc., Bkg. Co., 103 Me., 418; State ex rel. v. Taxing Dist. of Shelby Co., 84 Tenn., 240.

Cases cited and distinguished: Smoky Mountain, etc., Co. v. Lattimore, 119 Tenn., 620; Railroad v. Bate, 80 Tenn., 573; Ward v. Alsup, 100 Tenn., 619; Tomlinson v. Board of Equalization, 88 Tenn., 1; Carriger v. Morristown, 148 Tenn., 585.

Codes cited and construed: Secs. 790, 790a1, 790a2, 807a12 (S.).

4. **TAXATION.**

Mere errors in honest judgment of county board of equalization as to value of property will not obviate binding effect of conclusion, in absence of fraud. (*Post, pp.* 347-348.)

Case cited and approved: Los Angeles Gas & Electric Co. v. Los Angeles County, 162 Cal., 164.

5. **TAXATION.** Bill in court of chancery for refund of tax on land owned by bank, with no allowance therefor on capital stock, is not authorized, where county board of equalization was not guilty of fraud in denying relief, and bank failed to appeal therefrom. (Shannon's Annotated Code, Section 807a12).

Where county board of equalization was not guilty of fraud in sustaining assessment on land owned by bank, with no allowance therefor on bank's capital stock, failure of bank to appeal therefrom under Shannon's Annotated Code, section 807a12, but rather relying on promise of county board that relief would be granted, does not authorize bill in court of chancery for refund. (*Post, p.* 348.)

---

*Headnotes 1. Taxation, 37 Cyc., p. 1177; 2. Taxation, 37 Cyc., p. 1093; 3 Taxation, 37 Cyc., p. 1098; 4. Taxation, 37 Cyc., p. 1108; 5. Taxation, 37 Cyc., p. 1135.

FROM JEFFERSON.

Appeal from the Chancery Court of Jefferson County. —Hon. E. R. Taylor, Chancellor.

Frank Park, Jr., for Mossy Creek Bank.

C. T. Rankin, for Jefferson County and others.

Mr. Powers, Special Justice, delivered the opinion of the Court.

The bill in this cause seeks to recover $649.40, with interest, from Jefferson county theretofore paid by the bank under protest; said sum being for two years, 1923 and 1924. A farm in Jefferson county, containing four hundred forty acres of land, was conveyed to two of the officers of the bank as trustees for the bank by the clerk and master of the chancery court, at a court sale, in consideration of $19,550 paid by the bank. In 1923 the taxes due on the farm were assessed to the two owners, in whose name the title appeared, and, furthermore, the bank was assessed its full capital stock. The same happened in 1924.

The amount of taxes for each of these years was three hundred nine dollars and seventy cents. In 1923 the bank sought to be relieved of this amount, $309.70, going before the equalization board of Jefferson county during its 1923 session, and explaining the situation to it, and petitioning for relief. This relief was refused by the county equalization board. The bank then went

before the county court and sought relief, which was denied. The same was done in 1924. In 1925 the State authorities, and thereafter the county board of equalization, allowed the credit, and at the following term of the county court, in 1925, the complainant appeared there, and petitioned for a reimbursement of the $619.40 for 1923 and 1924, but the county court denied the relief, notwithstanding the county trustee in the open court admitted that the complainant was entitled to be refunded the amount of these taxes. The complaint alleges that it has paid its taxes for the years 1923 and 1924 in full, but that it should be allowed to recover the $619.40 from the county, the bank's theory being that it was assessed on its real property and also on the full amount of its capital stock, whereas it should have been assessed upon its capital stock, after deducting the assessment upon the real property. By an amended bill, the bank alleges that it appeared before the equalization board in 1923, and proved by the presentation of a contract, which is exhibited to the amended bill, that the Bradshaw property belonged to the bank, and not to the two officers who held the legal title, and that the board of equalization of Jefferson county informed the bank that it would deliberate over this question and advise the bank, but failed to do so, and the complainant had no notice of its decision, until it was too late to appeal to the State board of equalization, nor until the trustee called for the payment of the taxes for 1923. The bill further alleges that at the time of the payment of the 1924 taxes, in June, 1925, the State board had admitted the mistake in double taxation alleged in the bill, and the county trustee assured the bank that he believed the county

court would refund the taxes, but the county court granted no relief. It is alleged that the action of the county court was a fraudulent avoidance of the responsibility which it should have assumed, and that the action of the board of equalization in 1923, in not advising the bank of its adverse decision, amounted to a fraud, and deprived the bank of its right to appeal to the State board.

The contract exhibited to the amended bill shows that the bank requested the two officers to purchase the farm in a chancery suit in Jefferson county, same being sold under first mortgage, and that the said two parties purchased the farm for $19,550 and the sale was confirmed at the November term, 1922, of the court, and deed was delivered to them and recorded, and that the bank advanced the money, and the bank was to pay all taxes; the contract providing that the bank was of the opinion that the lands could be handled at a private sale so as to net a sum in excess of $19,550.

Both the original and amended bill were demurred to. The original demurrer was refiled to the amendment. The defendants in the lower court demurred, first, "because there was no equity on the face of the bill;" demurred, second:

"Because this court has no jurisdiction of the matters complained of in the bill until the county board of equalization for this county had passed upon the matter, and then the State board of equalization has jurisdiction by appeal to correct errors in assessments wrongfully made or unlawfully made, and until said boards have passed upon such assessments this court is without jurisdiction to act, and only then in the event of fraud, wrong-

ful or arbitrary acts on the part of the said board of equalization.''

The third ground of demurrer was as follows:

''Because the complainant, if it has any remedy at all, it is by writ of *certiorari* and *supersedeas* to have the action of the county equalization board reviewed and corrected, since it is alleged it was prevented from appealing from the action of the county board to the State board of equalization where the matters'' (might) ''have been corrected. That the proper remedy was by appeal from the action of the county board, and, if the complainant lost its right of appeal, then writs of *certiorari* will lie as a substitute for said appeal. Therefore this court has not jurisdiction to hear and determine the matters complained of by the bill.''

The chancellor sustained the second and third grounds of demurrer above quoted in full and dismissed the suit. An appeal was taken to the court of appeals to be held in Knoxville in September, 1925. The opinion of the chancellor is made a part of this decree.

The parties have agreed that this case should be determined by this court upon assignment of errors and briefs with the record; the facts not being in controversy.

The error assigned in this court by the bank is as follows:

''The honorable chancellor erred in sustaining the demurrer to the bill, and should have overruled said demurrer. He should have held that the taxation of the farm, and also the capital of the bank (its capital stock), was equivalent to double taxation in violation of all law and the Constitution of the State; that the error complained of amounted to a double assessment, and, not

being a question of equalization of taxes, the county board, in fact and truth, had no jurisdiction of the matter, and, of course, no appeal was necessary to the State board, it having no jurisdiction of such matter. It not having been assumed that there would be a double taxation of property, it was not provided for by the legislature in granting these boards their power and jurisdiction. He should have held that, even if these boards had jurisdiction, the chancery court could not be ousted of its jurisdiction to hear and determine such a matter, when it was not a question of equalization of taxes, but the unlawful doubly assessing of property. His holding and decree sustaining the demurrer should, therefore, be reversed and the case be remanded for further proceedings.''

The chancellor in his opinion said in part:

''I am of the opinion from the Code sections above *set* out (referring to sections 802a4, 790a1, and 790a2 of Shannon's Code) that the assessment of the Bradshaw farm to the complainant was properly made, and that the shareholders of the complainant were entitled to have had its value deducted from the assessed values of their respective shares of stock in the complainant. As this was not done, there existed an excessive assessment. It appears from the bill that this excessive assessment was presented to the county board of equalization, and that board refused to grant relief. The only remedy then open to the complainant was an appeal to the state board of equalization, which it did not perfect. The decisions of our supreme court above mentioned directly hold that the taxpayer can only obtain relief through the manner provided by statute,'' etc.

The question for determination here is whether or not the chancellor had jurisdiction to act upon this case. The Act of 1907, chapter 602, section 32, as set forth in section 802a4 of Shannon's Code, makes it the duty of the county board of equalizers to carefully examine, compare, and equalize the county assessments; "to eliminate from its lists property exempt from taxation; to hear any just complaints of any party or parties feeling aggrieved on account of excessive assessment of property, and if, in their judgment, the property is assessed at more than its actual cash value, it shall be reduced to the actual cash value of the same; to correct any and all errors arising from clerical mistakes or otherwise that may come or be brought to the attention of the board," etc.

Section 802a11 of Shannon's Code, the same act, then provides:

"When the county board of equalizers shall have determined the matters of equalization and values before it and within its jurisdiction, such action shall be final, except in so far as the same may be revised or changed by the State board of equalization."

Under these sections, it was within the jurisdiction of the county board of equalization to equalize the assessments made upon this property, and to correct errors, if any. It was their duty to assess the farm at its value, $19,550, and was their duty to make a reduction of any excessive assessments of property. As we see this case, the question involved is one of excessive assessment of the bank's capital stock. Complainant alleges that the board of equalizers took the matter under advisement, and promised to notify it, but did not notify the bank of

their action. The bank, however, was present before a *quasi*-court, and should have kept advised of its conclusion. The county board of equalization is a *quasi*-court. *Smoky Mountain, etc., Co.* v. *Lattimore,* 119 Tenn., 620, 105 S. W., 1028; *Briscoe* v. *McMillan,* 117 Tenn., 115, 100 S. W., 111. In the latter case, the court said:

"Now, we fully agree with the contention made on behalf of the State that by the provisions of this act the said board is constituted a *quasi*-court of record, and that its findings in the exercise of the jurisdiction conferred upon it have the force and effect of judicial determinations, and cannot be collaterally attacked.

" 'The officers whose duty it is to fix assessments, whether as original assessors or as boards of equaliza·tion and review passing upon the work of the assessors, act in a judicial or *quasi*-judicial capacity, and their findings, when made in good faith and in the exercise of an actual jurisdiction, are like the judgments of courts, secure from collateral attack' [citing authorities].
. . . Its judgment cannot be collaterally attacked up·on the ground that the board proceeded in the exercise of its jurisdiction without hearing evidence. A decree or judgment of a court of record having jurisdiction of a person and subject-matter is not void because the court pronounced said judgment without hearing evidence. The appropriate remedy of reviewing such a decree or judgment is by appeal or writ of error, or other direct proceeding. It cannot be collaterally attacked upon such a ground"—citing *Railroad* v. *Bate,* 12 Lea, 573; *State ex rel.* v. *Taxing District of Shelby County,* 16 Lea, 240.

And quoting from *Railroad* v. *Bate,* the court said:

"Although the boards may be officers of the State and proposing to discharge their duties as such, yet, if they leap the prescribed limits of the law under which they act, it is the right of those about to be injured to ask for, and the duty of the courts to grant, restraining relief, and this may be done by petition for writs of *certiorari* and *supersedeas.*" *Briscoe* v. *McMillan,* 117 Tenn., at pages 132, 133, 134, 100 S. W., 111.

In *Ward* v. *Alsup,* 100 Tenn., 619, 46 S. W., 573, the court, referring to that case, said:

"In this case there is no allegation that the assessors did not have the power to make the assessment, and none that it was fraudulently made,"—and the court, on page 748 of the opinion (46 S. W., 576), in that case said:

"If a taxpayer, by failing to pursue a remedy for the correction of irregularities in the assessment and levy of taxes, waives or loses his right to resist the collection of the taxes, the exaction of payment by the treasurer is not illegal or erroneous. If that remedy is not pursued, the tax may be collected. If he does not have his assessment corrected and reviewed when in his power to do so, it is an admission of its correctness. He must proceed in the manner prescribed by statute."

And again: "If a party contemplates questioning the entire system of assessments or the special assessment of his own property, by the statutory action to recover the amount demanded from him, he must put himself in position so to do by lodging his complaint, first, with the board appointed to hear such complaints under the law, and in the time provided by statute."

Then referring to suits to recover taxes paid under protest, the court said:

"But in order to have this remedy, in the absence of fraud or other ground of equitable intervention, he must have availed himself of such provisions of the statute as would have corrected the injustice complained of, before the tax was levied and made collectible." *Ward* v. *Alsup,* 100 Tenn., 619, at pages 748, 749, and 750, 46 S. W., 573, 577.

In the case of *Tomlinson* v. *Board of Equalization,* 88 Tenn., 1, 12 S. W., 414, 6 L. R. A., 207, in which the opinion was pronounced by Mr. Justice LURTON, it was held that under a statute providing that the judgment of the board of equalization "shall be final," and giving no right of appeal, the writ of *certiorari* lies only where the board exceeded its jurisdiction or acted illegally. Tomlinson sought to introduce witnesses before the board, but, under that statute, the court held that he had no right to do so, and further held that the board did not exceed its jurisdiction or act illegally in refusing to hear the witnesses.

The court said:

"The act  .  .  .  expressly declares that the action of the board shall be final. The lawmaker did not intend that its judgment on the merits should be subject to review. In all such cases the writ will not lie to review the matter upon the merits.  .  .  .  The judgment of a disinterested board of freeholders upon a mere matter of opinion as to valuations for taxation is as likely to be right as that of any court.  .  .  .  Value is matter of opinion, and when the law has provided officers upon whom the duty is imposed to make valuation, it is the opinion of these officers to which the interests of the parties are referred. The court cannot sit in judgment

upon their errors, nor substitute their opinions for the conclusions the officers of the law have reached''—citing Cooley on Taxation, 157.

And again: ''When the legislature has created an inferior jurisdiction, and has given no appeal from its decisions, it must be evident that it did not intend them to be revised upon the merits of the case. It is equally evident that it intended the jurisdiction to keep itself within the prescribed limits and to proceed in a legal manner; and it is only when it transgresses in these respects that 'sufficient cause' exists for a *certiorari*.''

The court declined the writ of *certiorari* in that case. *Tomlinson* v. *Board of Equalization,* 88 Tenn., 1, at pages 11 and 13d, 12 S. W., 414, 6 L. R. A., 207.

Now, under the 1907 act, appeal to the State board of equalization for review lay. The complainant in the case at bar alleges that he lost his appeal. He might have filed his petition for *certiorari,* upon sufficient cause shown for not obtaining such a review, or have had the State board of equalization by his petition review the action of the county board. There is no provision fixing the time of appeal in a case of this nature, and we cannot see how the bank lost its right of appeal, except for this allegation in its bill.

In the case of *Carriger* v. *Morristown,* 148 Tenn., 585, 256 S. W., 883, a petition for writ of *certiorari* and *supersedeas* to review a paving assessment was held insufficient, in the absence of an allegation that the city had exceeded its jurisdiction, or acted fraudulently, arbitrarily, or in bad faith. The court held that there was a similarity in the manner of such procedure between paving assessments and taxation. In that case, Mr. Justice

HALL delivered the opinion, and, referring to the Tomlinson case above, said:

"The holding of the court in *Tomlinson* v. *Board of Equalization* on the right of a dissatisfied property owner to have the action of such board reviewed, where the question is simply one as to the correctness of the judgment of the board, was approved by this court in *Staples* v. *Brown,* 113 Tenn., 639, 85 S. W., 254.

"In 25 R. C. L., 140, it is said: 'So it has often been held that the determination by a city council under proper legislative authority that certain property will be benefited by a local improvement is usually conclusive and not open to question before the court,' " etc.

The court in that case quote Judge COOLEY in his work on Taxation (3d Ed.), vol. 2, p. 1382.

" 'But for a merely excessive or unequal assessment where no principle of law is violated in making it, and the complaint is of an error of judgment only, the sole remedy is an application for an abatement either to the assessors or to such statutory board as has been provided for hearing it. The courts either of common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so.' . . . The levy of an assessment for taxes is not a judicial act, or a judicial proceeding, which gives to the property owner the right to have the courts pass upon the matter and substitute their judgments for that of the assessing tribunal or body. If the assessing board or tribunal does not follow the provisions of the statute, its action is subject to the revisory jurisdiction of the courts, invoked by certiorari [citing authorities]. But when the assessing

board or tribunal acts within its jurisdiction and powers and not fraudulently and in bad faith, in making assessments or fixing valuations on property, though it may err in its judgment, the writ of *certiorari* cannot be invoked to revise its action." *Carriger* v. *Morristown*, 148 Tenn., 606, 607, and 608, 256 S. W., 883.

In the Carriger case, the petitioner had the right to introduce proof and show that the assessment was excessive, but he did not attempt to do that. He excepted to the action of the board and filed his petition in the circuit court for writ of *certiorari* and *supersedeas*.

The shares of stock in a bank shall be assessed as personal property of the stockholders. Shannon's Code, section 790.

Real estate and tangible personalty of any corporation shall be assessed to the same in the same mode and manner as other real estate and tangible personalty. Id, section 790a1.

In computing the assessable value of shares of stock, section 790a2 of Shannon's Code provides that the assessed value of the real property shall be deducted from the value of the shares of stock.

We think that the chancellor was correct in holding that there was a lawful assessment, therefore, upon the farm, and, when the assessment was made upon the stock of the bank, if the value of the farm was not deducted, then there was an excessive assessment. The county board of equalization, having been offered the proof of this excessive assessment of the stock, denied the relief sought by the bank. The bank's remedy then was to appeal, but this remedy it did not pursue, and the assess-

ment thereupon became final. *Carriger* v. *Morristown,* 148 Tenn., 606, *et seq.,* 256 S. W., 883.

The appellant bank insists in this court that it should be given relief on the authority of *Bank* v. *Memphis,* 107 Tenn., 66, 64 S. W., 13. In that case, however, the court held that the Act of 1897, chapter, 1, providing for the assessment of back taxes was not retroactive, and that the trustee acting under that law had no authority to make assessments for 1896 or 1897, and that his attempt so to act was void for want of authority, and the assessment was, therefore, invalid, and not authorized by any legislative provision, and, therefore, the taxpayer who had paid under protest could maintain his suit to recover back the money.

But the statute above quoted in the case at bar shows that the county board of equalization did have the power to assess this property, and, failing in its attempt to obtain a reduction of the value so fixed, the bank should have prosecuted the matter to the state board of equalization, which, under section 807a12 of Shannon's Code, is authorized ''to reduce or increase values of properties so as the values of all assessments equalized by said board shall conform to said standard of actual cash values.''

While it is true that it has been held in the case of *East Livermore* v. *Livermore, etc., Bkg. Co.* (1907), 103 Me., 418, 69 A., 306, 15 L. R. A. (N. S.), 952, 13 Ann. Cas., 631, that a tax upon the shares of stock of a bank, and also upon the bank's assets, is a double taxation, and that it cannot be levied in the absence of express legislative authority, there does not seem to have been

raised in that case any question of the jurisdiction of the court.

In the case of *Los Angeles Gas & Electric Co.* v. *Los Angeles County,* 162 Cal., 164, 121 P., 384, 9 A. L. R., (1912) page 1277, the court holds that the decision of such a board is conclusive, and further holds that, when the assessment is attacked because arbitrary and fraudulent on the part of the assessor, this does not necessarily involve the board of equalization; that the finding by the board of equalization that specified property was assessed for taxation at the same value proportionately as all the other property in the county is conclusive on the question of fairness of the valuation. Under that authority, relief in court cannot be available, unless the board has proceeded "arbitrarily and in willful disregard of the law intended for its guidance and control, with the evident purpose of imposing unequal burdens upon certain taxpayers, or there is something equivalent to fraud in the action of the board." Mere errors in honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board. Such a board is, "in the absence of fraud or malicious abuse of its powers, . . . the sole judge of questions of fact and of the values of property." *Los Angeles Gas & E. Co.* v. *Los Angeles County,* 162 Cal., 170, 121 P., 386, 9 A. L. R., 1282, and valuable note, citing numerous other cases to the same effect.

"A fraudulent overvaluation of property by an assessor will not be set aside where it appears that the board of equalization has brought its honest judgment to bear on the matter, and determined the true value of the property. Such action by the board is conclusive on the ques-

tion of fairness of valuation and hence on the question of injury to the taxpayer by the attempted fraud of the assessor.'' See said note and numerous cases in support thereof.

We cannot find the county board was guilty of fraud in assessing the stock too high or permitting an excessive assessment. So it results that we hold that the bank, not appealing, and not prosecuting a review of the assessment before the State board of equalization, which had the exclusive authority to review the same, but rather, as shown by the allegations of its bill, relying upon the promise of the county board and of the trustee that relief would be granted it in the county, cannot undertake to have the court put itself in the place of these statutory officials. It therefore follows that the valuation placed upon the bank's stock by the county board became final, and that this court has no power to review the assessment or change that valuation. The decree of the chancellor is affirmed, with costs.

All concur.