L. C. Haney *et al. v.* City of Nashville

AND

Mrs. E. R. Rutherford *v.* City of Nashville.

(*Nashville.* December Term, 1928.)

Opinion filed March 16, 1929.

Lurton Goodpasture, for appellant.

J. W. Moore, J. Carlton Loser, Richard Gleaves, Ferris Bailey and Charles Gilbert, for appellee.

Mr. Justice Chambliss delivered the opinion of the Court.

*(1)* These two causes, heard together, call for the construction of the following subsection of Section 42 of the abutting property paving tax law, conceded to have been lawfully enacted for Nashville (Chap. 125, Private Acts 1923):

"Section 42. Be it further enacted. (1) That the Board of Public Works of said City shall have the power and authority to design, or cause to be designed, contract for, and execute, or cause to be executed, the construction and improvement, or the reconstruction and reimprovement of any street, avenue, alley, highway, or other pub-

lic place, by opening, extending, widening, grading, paving, macadamizing, curbing, guttering, or othewise improving the same, in such manner and with such material or materials, and with such culverts and drains, as said board may prescribe, and to cause two-thirds of the cost or expense of the aforesaid work and improvements to be assessed against the property abutting on said street, avenue, alley, highway, or other public place so improved. Such improvement shall be constructed as provided in this section, whenever the owners of two-thirds of the affected front footage of the abutting property shall petition in writing for such improvement to be made and the cost of such improvement shall be assessed and provided.''

The insistence of complainants, owning property abutting on certain streets paved under the act, in conformity with provisions thereof, is that the City authorities made the assessments complained of without a petition in writing signed by the owners of two-thirds of the affected front footage; that such improvement is authorized only when such petition shall have been so signed. The argument is that the concluding clause of the above quoted subsection is an express limitation, or restriction, on the power conferred; that if not clearly so, the provisions are at least ambiguous and justify the application of that rule of construction recognized in all tax legislation which resolves a doubt in favor of the tax payer and against the power.

It will be observed that it is first provided that, ''the Board of Public Works of said City shall have the power and authority'' to do the work of paving ''in such manner and with such material . . . as said board may prescribe, and to cause two-thirds of the cost or expense

. . . to be assessed against the property abutting on said street." The concluding clause of this subsection reads: "Such improvement *shall* be constructed as provided in this section, whenever the owners of two-thirds of the affected front footage of this abutting property shall petition in writing for such improvement." The italics are ours.

The contention of the City is, and the Chancellor sustained a demurrer to the bill in this view, that (1) this subsection vests in the Board of Public Works the power on its own initiative to proceed and to make the assessment, and (2) vests in the property owners the right to take the initiative and compel such action. We are inclined to this view as the more natural construction, in the absence of language expressly qualifying the grant of power first expressly conferred on the Board. The insistence of complainants would be more plausible, but for language found in succeeding subsections of this section of the act, which it is proper to consider in determining this question of construction.

Bearing in mind that the determinative question is whether or not the board may act on its own initiative, it will be observed that in Subsection 15, which provides for action in the event a petition is presented signed by the owners of sixty-six and two-thirds (66 2/3) per cent. of the frontage, it is significantly said that, "thereupon proceedings may be had under this section of this Act the same in all respects as if the improvements had been begun by the Board *on their own initiative,*" etc. Here appears to be a clear recognition, in the language we italicize, of the right of this Board to exercise in proceeding under the powers vested in the preceding subsection. This conclusion seems inescapable.

*(2)* In a second and alternative aspect of the bill, attack was made upon the assessment as excessive and unjustified under special conditions alleged to exist, a prayer of the bill being that, ''they have a decree diminishing said assessments against their property in proportion to the benefits actually accruing to the property of complainants on account of said improvements,'' etc.

Conceding that this relief is not repugnant, as insisted for the City, complainants are confronted with the objections (1) that they failed to appear before the City authorities and object to the amount of the assessments, as the Act provides they may do, it being presumed that the opportunity for so doing was duly afforded them. *Siler* v. *Siler*, 152 Tenn., 382; and (2) that their remedy is not by injunction, but by *certiorari* to the assessing Board.

*(3)* Opinions of this Court sustain these objections, holding both that a tax payer must pursue the remedies provided for him for the correction of inequalities, irregularities and illegalities before the Board or Commission authorized to fix assessments, or he will be held to have waived his objections; and also that, when denied relief there, the remedy of the tax payer is by *certiorari* in a Court of law. Our cases have been recently reviewed in *Mossy Creek Bank* v. *Jefferson County*, 153 Tenn., 332; and see, in addition to those therein cited, the more recent cases of *King* v. *City of Bristol,* 156 Tenn., 643, and *City of Nashville* v. *Land Co.,* 155 Tenn., 382, the last case dealing with the identical charter section now before us. If it be conceded that the character of complaint herein made is of that class which may be raised without an appearance of the land owner before the assessing Board, as was found to be true in *City of Nashville* v.

*Land Co., supra,* that case is nevertheless authority for the view that the remedy is by *certiorari* in a Court of law.

The decree of the Chancellor sustaining the demurrers and dismissing the bills must be sustained.