TOWN OF ONEIDA *v.* DILLARD PEMBERTON.

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

1. MUNICIPAL CORPORATIONS. IMPROVEMENT DISTRICTS. INTERPRETATION.

A proviso in an Act defining the obligations and rights of the parties with respect to a particular district cannot be extended to some other district. (Post, p. 628.)

2. MUNICIPAL CORPORATIONS. IMPROVEMENT ASSESSMENTS. CORNER LOTS.

It is generally held that a corner lot may be assessed for improvements made on either street upon which it abuts, and this rule is not affected by the existence of a statute limiting the assessment to a certain percentage of the value of the property assessed, but a corner lot may be assessed for an improvement of each street up to the statutory limit. (Post, p. 628.)

Citing: 44 C. J., sec. 3078; Covington v. Schlosser, 141 Ky., 838; Rich v. Woods, 118 Ky., 865; Miller v. Sheldon, 198 Ia., 855; Durst v. Des Moines, 164 Ia., 82; Ross v. Barker Asphalt Paving Co., 158 Cal., 37; Allen v. Krenning, 23 Mo. App., 561; Charlotte v. Brown, 165 N. C., 435.

3. MUNICIPAL CORPORATION. JUDGMENT BOARD OF MAYOR AND ALDERMEN. APPEAL.

Where an assessment for improvements is made under the statute against the owner of a lot or land abutting on or adjacent to any street for which the assessment is made, and the owner shall be aggrieved by the action of a legislative body of any municipality in confirming the list or levy or assessment rolls, such owner shall have the right of appeal from the action of such legislative body to the Circuit Court of the County in which

such city or town is located, and upon such appeal the cause shall be tried de novo. (Post, p. 633.)

Citing: Chapter 25, Acts of 1915.

Distinguishing: Carriger v. Mayor, etc., 148 Tenn. (21 Thomp.), 599.

---

### FROM SCOTT.

---

Appeal from the Circuit Court of Scott County.—HON. W. H. BUTTRAM, Judge.

I. J. HUMAN and J. H. ANDERSON, for plaintiff in error.

CHAS. H. DAVIS and HOWARD H. BAKER, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By this proceeding Pemberton questions the right of the Town of Oneida to assess a corner lot which he owns for paving purposes, in excess of twenty-five per cent of its actual cash value.

By chapter 298 of the Private Acts of 1915, towns of the State having a population of not less than 1850 nor more than 2050 are authorized to create improvement districts for the purposes of opening, widening, extending, grading, curbing, guttering, paving, gravelling, macadamizing, parking or laying permanent sewers. The act applies to the Town of Oneida.

Main Street in said town runs north and south, and North Street runs east and west. The lot in question is located at the northwest corner of Main and North Streets, fronting seventy-five feet on Main Street and running back west on North Street 120 feet.

157 Tenn.—40.

Main Street is in Improvement District No. 1 and North Street is in District No. 4. Pemberton admits the right of the Town of Oneida to assess his property for paving purposes in both districts, provided the aggregate assessments do not exceed twenty-five per cent of the cash value of his lot, exclusive of improvements.

The Town of Oneida, on the other hand, insists that it can make assessments in each district up to the twenty-five per cent limit.

The trial court and the Court of Appeals held against the Town of Oneida, and the case was brought to this court by petition for *certiorari,* which has heretofore been granted, and argument waived.

Section 7 of said act is as follows:

"That whenever any street, highway, avenue, alley, or part thereof, in the cities or towns aforesaid, is laid off as, and constituted, an Improvement District as hereinbefore provided, that two-thirds of the expenses or cost of the improvement made therein shall be assessed against or upon the land abutting on, or adjacent to, said street, or alley, or part thereof, to be improved, and constituting the Improvement District, and one-third of such expenses shall be paid by said city or town out of its general funds, or special funds to be raised for the purpose of paying the city's or town's share of the cost of said improvement. The city or town in addition to said one-third cost of the whole shall also pay for the cost of said improvements at the intersections of said street, highway, avenue, or alley, with other streets, highways, avenues, or alleys and the space opposite alley, and also for the spaces in front of city property, and the cost of subgrading or of establishing permanent grades as hereinbefore provided. Said two-thirds of the cost

or expense of said improvement on such street, highway, avenue or alley, or part thereof, constituting the Improvement District that is to be assessed against, or upon the lands abutting on or adjacent to said street, highway, avenue, or alley, shall be assessed upon, or against said land and the several lots or parcels thereof with equality and uniformity and according to the value thereof without including in such value the cost of the improvements thereon; provided, however, that the aggregate or total amount of the levy or assessment made upon or against any lot or parcel of land shall not exceed twenty-five per cent of the actual cash value of said lot, or parcel of land, not including the improvements thereon, and the city or town shall pay any part of such levy or assessment upon or against any such lot or parcel of land as may be in excess of twenty-five per cent of the actual cash value thereof, not including the improvements thereon.''

This provision, it will be noted, deals with an improvement district and undertakes to define the obligations and rights of the town and the property owners within said district. The proviso is ''that the aggregate or total amount of the levy or assessment (that is within the district) made upon or against any lot or parcel of land shall not exceed twenty-five per cent. of the actual cash value of said lot.''

The use of the word ''aggregate'' implies more than one assessment. But the act contemplates grading, curbing, guttering, paving, gravelling, macadamizing or laying permanent sewers. To illustrate, the town may at one time assess for guttering, at another for sidewalks, and still later for sewerage. The meaning of the act is that the town may do all of these things within the dis-

trict, provided the aggregate cost to the owner shall not exceed twenty-five per cent of the value of the lot.

*(1)* But we cannot extend this proviso to some other district, when the Legislature was defining the obligations and rights of the parties with respect to a particular district.

Under the title "Municipal Corporations," 44 C. J., section 3078, it is said:

*(2)* "As elsewhere shown, it is generally held that a corner lot may be assessed for improvements made on either street upon which it abuts. And while there is some authority to the contrary, the better view is that this rule is not affected by the existence of a statute limiting the assessment to a certain percentage of the value of the property assessed, and that corner lots may be assessed for the improvement of each street up to the statutory limit."

The text is supported directly or in principle by the following cases: *Covington* v. *Schlosser,* 141 Ky., 838; *Rich* v. *Woods,* 118 Ky., 865; *Miller* v. *Sheldon,* 198 Ia., 855; *Durst* v. *Des Moines,* 164 Ia., 82; *Ross* v. *Barker Asphalt Paving Co.,* 158 Cal., 37; *Allen* v. *Krenning,* 23 Mo. App., 561.

In the first case cited above the statute under which the city proceeded was in this language:

"No city of the fourth class, by virtue of any authority it has to improve its street or other public ways at the cost of the owners of ground fronting or abutting thereon, have authority to charge the ground or the owner thereof on account of such improvements with more than one-half the value of such ground, after the improvement is made, excluding the value of buildings and other improvements upon the property so improved."

The court in the opinion said:

"Counsel for appellees insist that when the city has assessed a corner lot for the improvement of the street or public way on either street in a sum equal to one-half the value of the lot, it is ·thereby estopped from assessing against the lot the cost of improving the street or public way on the other street, and that the charge for constructing sewers is to be treated as a part of the improvement of the street or public way in determining the amount that may be assessed.   While counsel for the city contends that the city has the power to charge a corner lot with the cost of street and public way improvements on each street to the extent of one-half the value of the lot; and in addition thereto with the cost of sewer construction.   It will be observed that the issue between the parties is plainly defined and that the proper solution of the questions presented depend on the construction of the foregoing statutes under which the assess· ments were made.   If A. owns a corner lot fronting 100 feet on B. street and 100 feet on C. street, it is evidence that A. receives the benefits, whatever they may be, that· grow out of the fact that his lot abuts on two streets.   It may be that this fact in some instances will not add anything to the value of the property, but whether this be so or not, it is nevertheless an undeniable proposition that his lot fronts on two streets, and so when the city comes to improve B. and C. streets, it has the right to charge A. with the cost of the improvement of each of these streets.   This proposition counsel for appellees do not question, but insist that the assessment against the lot for both streets cannot exceed one-half the value of the lot, without buildings or other improvements thereon. If this contention were sound, it would follow that if a

corner lot abutting on B. and C. streets without any buildings thereon was worth, to illustrate, $200, and the improvements made on B. street assessed against the lot cost $100, that the city could not charge this lot with any part of the cost of the improvements on C. street. The result of this would be that A. while getting the benefit of the improvements on C. street, would be exempt from liability from any part of their cost. The further result would be that if D. owned a lot that abutted on C. street 100 feet, adjacent to A.'s lot, he must bear his share of the burden of the improvement of that street, while A. although having the same frontage on C. street and enjoying equally with D. the benefit of the improvements, would not be taxed with any part of its cost. It seems to us that this would be an unjust discrimination against D. and in favor of A. The theory upon which these local assessments are made is that all lots fronting on the same street shall bear their proportionate part of the cost of the improvement of that street, and we are unable to perceive why A. should be exempt from this liability merely because his lot has been assessed to pay the cost of improvements on another street upon which it abuts. Nor do we find in the statute anything that would justify us in so holding. The statute provides that the city shall have the power to 'improve its streets or other public ways at the cost of the owners of ground fronting or abutting thereon.' It makes no distinction between corner lots and other lots. But, if, in the illustration we have mentioned, A. was exempt from the cost of improving C. street it is plain that the express purpose of the statute to charge owners of ground fronting on streets with the cost of improvements would be defeated and A. would receive the same benefits and advantages as other owners fronting

on C. street, without bearing any of the burdens. The fact that one street is improved at a cost not exceeding one-half the value of the lot does not deny the city the right to charge the cost of improving the other street against the lot to the extent of one-half of its value, as each street is to be treated separately and entirely independent of the other street. The limitation upon the amount of the assessment applies only to the improvement of each street upon which the lot fronts. In no other way can the intention of the statute be carried out or equal justice be done between lot owners. In some instances, perhaps many, this may result in charging corner lots with improvements greatly in excess of one-half their value, but this condition is brought about by the location of the lot, and the burden is imposed because the lot enjoys the benefits of two streets and, therefore, should be charged with the improvement of each of them. The principle we have announced was virtually settled in *Rich* v. *Woods,* 118 Ky., 865, where it was said:

" 'A lot fronting on two streets has more advantages, and consequently more value, than if it fronted on one only. As equality of public burdens is a cardinal consideration in their imposition, it must follow that the lot that gets twice as much advantage from a public improvement as another must pay twice as much of the cost of the improvement as the latter. . . . If this lot then fronts on two or more streets, each of which must needs be improved as a whole, or for a considerable distance passing his property, he must contribute ratably with his neighbors in doing the work, although as a matter of fact some part of the work cannot be shown to be of actual and direct benefit to his abutting property.' "

The conclusion of the court was in this language:

"That when a corner lot is assessed for the cost of 'improving the streets or other public ways' upon one street upon which it abuts, that the cost of this improvement is not to be considered in estimating the charge that may be made against the lot for improving the other street on which it abuts. But the cost of improving each street, independent of the other, cannot exceed one-half the value of the ground, after the improvement is made, 'excluding the value of the buildings and other improvements upon the property so improved.' "

In *Durst* v. *Des Moines, supra,* the statute involved contained this language:

"Such assessment (for public improvement) shall not be in excess of the special benefits conferred, or in excess of twenty-five per cent. of the actual value of such tract at the time of the levy."

In the opinion in that case it was said:

"In other words, each separate public improvement is to be dealt with on its own merits, and according to its own peculiar circumstances, and the limit of twenty-five per cent. is to be applied in the case of each district improvement, without reference to other burdens which the property may have been compelled to bear for the construction of other improvements. That the paving of two different streets constitutes two distinct improvements we think is not open to serious doubt, and the fact that the separate improvements may each operate to create like special benefits upon the same lot does not serve to effect their coalescence into a single improvement for the purposes of the statute limiting the imposition of special assessments."

We hold, therefore, that the Town of Oneida has a right to assess the lot in question in both districts to the limit specified.

In a note to the Corpus Juris text, cited above, it is said that the North Carolina Court, in *Charlotte v. Brown,* 165 N. C., 435, held to the contrary. In that case section 7 of the city charter was in this language: "Provided further, that no assessment against any piece of property improved as in this act provided shall in any case exceed the amount of special benefit to, or enhancement in value of, twenty per cent of the assessed taxable value thereof." The court held that the twenty per cent clause in the charter was a limitation upon the power of the city.

From the facts disclosed in the opinion in that case we are unable to say that it conflicts with the majority rule.

*(3)* The Town of Oneida makes two other questions, *viz.*: (a) that the judgment of the Board of Mayor and Aldermen of the Town of Oneida in regard to value was final, in the absence of fraud; and (b) that the Court of Appeals erred in holding that a preponderance of the testimony in the circuit court was sufficient to overthrow the assessment made by the Board of Mayor and Aldermen. It is insisted that it must clearly and satisfactorily appear that the assessment was erroneous, as was held in *Carriger* v. *Mayor, etc., of Morristown,* 148 Tenn., 599. In that case the statute made the action of the Board in levying the assessment final.

The instant case is governed by section 25 of the act under consideration, which is in this language:

"That when an owner or part owner or person having any interest in any of the lots or lands abutting on or adjacent to such street, highway, avenue or alley, or part thereof, constituting an Improvement District as hereinbefore provided, upon or against which said lots or lands said levies or assessments have been made, as

hereinbefore provided, shall be aggrieved by the action of the legislative body of such city or town in confirming the lists or levy or assessment rolls aforesaid, or in confirming and making such levy or assessment upon or against his lot or land, such owner or person having an interest in such lots or lands shall have the right of appeal from the action of such legislative body to the circuit court of the county in which such city or town is located by petition duly filed setting forth the facts and claims of such petition, and such cases shall be tried by such circuit courts in the same manner as now, or may hereafter be provided for the trial of other Civil cases in actions at law in this State."

All cases appealed from justice and the county court to the circuit court are tried *de novo*. See cases cited on page 587, volume 1, Encyclopedic Digest of Tennessee Reports.

Section 25, Acts of 1915, provides that appeals shall be heard in the circuit court as appeals in other civil cases are heard.

The judgment of the Court of Appeals will be modified in accordance with this opinion. Each party will pay one-half of the costs.