SOUTHERN RAILWAY COMPANY v. CITY OF ELIZABETHTON.

Eastern Section.    June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

Burrow & Burrow, of Bristol, and Miller, Seiler & Hunter, of Elizabethton, for plaintiff in error.

Allen & Allen, of Elizabethton, for defendant in error.

FAW, P. J. The Southern Railway Company has appealed from a judgment of the circuit court of Carter county sustaining, as "valid and binding," the levy of an assessment made by the City of Elizabethton, a municipal corporation, upon or against certain real property of the railway company for a part of the cost of the improvement of a street upon which said property abutted.

The "appeal" herein must be construed and treated as an appeal in the nature of a writ of error, as a simple appeal to this court does not lie from a judgment in an action at law. Spalding v. Kincaid, 1 Shan. Cas. 31; Manley v. Chattanooga, 1 Tenn. App. R. 65.

Pursuant to the provisions of chapter 18 of the Acts of the First Extra Session of 1913, the City of Elizabethton (hereinafter called the City) created an improvement district within the corporate limits of said municipality, to be known as Improvement District No. 44, of all that part of "E" street from Riverside street to Elm street, "for the purpose of providing sidewalks, sewers, grading, curbing and concrete pavement according to plans and specifications to be made and provided by the city engineer and approved by the city manager and board of commissioners."

The Southern Railway Company is the owner of the land abutting on each side of "E" street, between Pine and Elm streets, within said Improvement District No. 44.

The ordinance creating (among others) Improvement District No. 44 was finally passed on February 23, 1926, by the governing

body of the city, which was then officially known as the board of commissioners, but which by a subsequent charter (Private Acts of 1927, ch. 261, p. 719) is designated as the city council.

It does not appear that the railway company made any protest or objection to the creation of Improvement District No. 44, but that after the ''improvements'' had been completed and the apportionment and assessments had been made by the city, the railway company presented to the city council and the city manager a protest, in writing, which (omitting caption and signature) is as follows:

''Comes the Southern Railway Company and objects and protests to the assessment made against its property for street improvements made on 'E' street, between Pine and Elm streets, in said City of Elizabethton, and for grounds state the following:

''1st. That said 'E' street, between Pine and Elm streets, was formally closed by order of the county court of Carter county, on the 4th day of April, 1904, which action was taken by said county court before the City of Elizabethton was incorporated, and said street has been closed as a public street ever since that time.

''2nd. That said City of Elizabethton has never at any time taken any steps to open said street, but has taken said land without authority under the law and without consent of the property owners, and paved said land where same was not opened and dedicated to the public as a street.

''For the above reasons, the Southern Railway Company protests and objects to any assessment against its property abutting upon said pavement.''

The city council overruled the aforesaid protest of the railway company and confirmed, or adhered to, the assessment levied upon the property of the railway company as aforesaid, and on February 21, 1928, the railway company filed with the clerk of the circuit court of Carter county a petition for an appeal from the action of the city council in making said assessments against its property, accompanied by an appeal bond, which petition is as follows:

''TO THE HONORABLE D. A. VINES, JUDGE, HOLDING THE CIRCUIT COURT AT ELIZABETHTON, TENNESSEE.

''Petition of the Southern Railway Company for an appeal from a levy or assessment levied or assessed by the 'legislative body of the City of Elizabethton against its property lying between Pine street and Elm street, being in what is known as Improvement District 44, comprising all that part of 'E' street from Riverside to Elk avenue, as provided in section 19, chapter 18, Acts of 1913, First Extra Session.

"Your petitioner respectfully represents to the court that by authority of chapter 18, Acts of 1913, First Extra Session, the City of Elizabethton by Ordinance No. 44, created a special improvement district to improve what was termed 'E' street from Riverside to Elk avenue, in the City of Elizabethton, thus crossing over your petitioner's property between Pine street and Elm street.

"Your petitioner would further show to the court that your petitioner is and was for sometime prior to 1904 the owner of all of Block 17, and the North half of Block 22, according to the Cooperative Town Company's plat of the City of Elizabethton, being the land between Pine street and Elm street.

"Your petitioner would further show to the court that 'E' street from Pine street to Elm street was closed by order of the county court in April, 1904, and that the same has remained closed ever since and that your petitioner being the owner of both sides of said street, and by and with the consent of said county court took actual possession of all the land between Pine and Elm streets and has had actual possession of same ever since until recently, the said City of Elizabethton took manual possession of same and did improve same over the objection of your petitioner. Your petitioner would further represent to the court that neither the City of Elizabethton nor the county court has ever at any time taken any legal steps to re-open 'E' street between Pine and Elm streets and that said street between Pine and Elm streets has never been legally re-opened for the public use and the City of Elizabethton without authority of law or otherwise took manual possession of said property and proceeded to improve same, it being the property of your petitioner.

"Your petitioner further represents to the court that the legislative body of said City of Elizabethton made a special assessment or levy against its property in Block 22, or on the south side of said street of the sum of $1,017.56, and likewise an assessment of $1,017.56 against Block No. 17, being on the north side of said 'E' street, making a total assessment of $2035.12, notwithstanding your petitioner protested or objected in writing to said assessment or levy for the reason that this portion of said Improvement District No. 44 was not a public street of the City of Elizabethton.

"Your petitioner, therefore, charges that said assessment or levy is not legal for the reason that said improvement was not made on a public street or public property in the City of Elizabethton, and that said city cannot legally assess your petitioner for making a street improvement over land of your

petitioner and over land which is not a public street, therefore your petitioners pray an appeal to Your Honor's court from the above mentioned assessment.''

The case was tried before the Circuit Judge, without a jury, on the 13th and 14th days of December, 1928, and at the trial, before the introduction of evidence, the railway company was permitted, upon its application and over the objection of the city, to amend its petition for appeal by adding thereto, as the last section thereof, the following:

''If the City of Elizabethton seeks to take and hold said land on E street, as a public street under its right of eminent domain, then the petitioner presents as a counterclaim that the City of Elizabethton is liable to it for the value of the land so taken, being of the value of $5000.''

Upon the allowance of the foregoing amendment, the city, by leave of the court, filed a plea as follows:

''The defendant, City of Elizabethton, for plea to the amendment of the petition seeking a set-off or recoupment on account of land taken the title to which plaintiff claims, says its action accrued, if any it had, more than one year before suit brought, and defendant therefore pleads and relies on the statute of limitation of one year as a complete defense to plaintiff's claim of set-off or counterclaim.''

The trial court heard oral testimony of witnesses on behalf of the parties, respectively, with a number of exhibits thereto, and thereupon the judgment of the court was pronounced and entered as follows:

''This cause came on to be heard before the Hon. D. A. Vines, Circuit Judge, without the intervention of a jury, and the premises being seen and understood, the court finds as follows:

''1. That the land in question formerly known as E street, between Pine and Elm streets, was the property of the Southern Railway Company at the time it was taken and appropriated by the City of Elizabethton in opening up a new street. That said new street abuts on the property of the Southern Railway Company, which is liable for the improvement assessment made by the city.

''2. The court is not fully decided that the Southern Railway Company may plead by way of recoupment or counterclaim the value of the land taken as against the city improvement assessment. The court is further of the opinion that even if this could be done the Southern Railway Company's suit, for the value of the land taken, in its cross action, is barred by the statute of limitations of one year.

"It is, therefore, considered by the court that the assessment of the City of Elizabethton for the street improvement in question is valid and binding, and the appeal of the Southern Railway Company is therefore dismissed and said Southern Railway Company is taxed with the costs of the cause for which execution is awarded.

"To which action of the court the Southern Railway Company saves exceptions."

In due season, the railway company moved for a new trial on two grounds stated in its motion, but the motion was overruled, and thereupon the railway company excepted to the action of the court in overruling its motion for a new trial and in rendering judgment against it, and prayed an appeal to this court, which was granted by the trial court and perfected by the railway company.

The final minute entry in the cause contains (immediately following the grant of an appeal to the railway company) a recital as follows: "and from so much of said judgment as holds that the railway company had title to the land in question, the defendant, City of Elizabethton, excepts and appeals."

Before disposing of the assignments of error, it will be well to say that, in our opinion, this case was triable de novo in the circuit court, with the city as plaintiff and the railway company as defendant, in substantially the same manner as a case is tried on appeal from a judgment of a Justice of the Peace to the circuit court. This question was before this court in the case of City of Rockwood v. C. N. O. & T. P. Railway Company, from the Roane County Law Docket, decided at Knoxville on May 15, 1929; and in the opinion in that case we said:

"At the threshold of this case it is important to ascertain whether or not it was triable de novo in the circuit court. The abutting property law of 1913, under which the city was admittedly proceeding, provides, in section 19, as follows:

" 'That when any owner or part owner of any of the lots or lands abutting on or adjacent to any street, highway, avenue, or alley that is improved or about to be improved as hereinbefore provided, and upon or against which said lots or lands, levies or assessments have been made for the purpose of paying for such improvements, as has been heretofore provided, shall be aggrieved by the action of the legislative body of such city in confirming the levies or assessments made by the legislative body as aforesaid, such owner or person shall have right to appeal from the action of such legislative body to the circuit court of the county in which such city or town is located; provided, said owner made objection or protest to said levies or assessments at the time provided for and appointed for object-

ing thereto, such appeal shall be perfected by filing with the clerk of such circuit court a petition setting forth the facts in regard to such levies and assessments and the irregularities or illegal acts in the making thereof; and such clerk shall thereupon notify such city or town to deliver a copy of such levies or assessments, and all proceedings had in reference thereto, to said clerk of said circuit court, and such case thereupon be docketed for trial like other civil census (causes) of action at law in this State; provided, that the appeal of any individual shall in no wise affect the legality of such levy or assessment as to other property involved in said levies or assessments; and provided further, that such appeal shall be perfected within thirty days after the final action of the legislative body making such levies or assessments; and if not perfected within this time, said levies or assessments shall be regarded as final, and shall not be reviewed by certiorari, injunctions, bills to quiet title otherwise by any of the courts of this State.'

"The railway company prosecuted its appeal from the action of the board of commissioners of the City of Rockwood by petition filed with the clerk of the circuit court, as prescribed in the section of the statute above quoted, and, on behalf of the railway company, it was insisted in the circuit court that the case had been brought to that court by 'a straight appeal;' that the case was there triable de novo 'like any other civil case,' and that the burden was on the city to show that it had made a legal assessment against the property of the railway company.

"On the other hand, it was contended for the city, in substance, that the laboring oar was on the railway company to establish the averments of its petition, and that it could not 'go beyond' its 'protest and petition.'

"It is seen that under the statute the railway company had the right to 'appeal' from the action of the board of commissioners to the circuit court, by pursuing the method therein prescribed, and when such appeal was perfected the case was to 'be docketed for trial like other civil causes of action at law in this State,' which we interpret as providing for a trial de novo in the circuit court, with the city as plaintiff and the railway company as defendant.

"The same question arose in the case of Town of Oneida v. Pemberton, 157 Tenn. 624, 633, under an abutting property law applicable to the Town of Oneida (chapter 298 of the Private Acts of 1915) containing a provision for an appeal by substantially the same method as that provided by the Act of

1913 here in question, although the verbiage of the Act of 1915 is somewhat different from that of the Act of 1913.

"In the case of Town of Oneida v. Pemberton, supra, the court said:

" 'The town of Oneida makes two other questions, viz: (a) that the judgment of the board of Mayor and Aldermen of the town of Oneida in regard to value was final, in the absence of fraud; and (b) that the Court of Appeals erred in holding that a preponderance of the testimony in the circuit court was sufficient to overthrow the assessment made by the board of Mayor and Aldermen. It is insisted that it must clearly and satisfactorily appear that the assessment was erroneous, as was held in Carriger v. Mayor, etc., of Morristown, 148 Tenn., 599. In that case the statute made the action of the board in levying the assessment final.'

"The instant case is governed by section 25 of the Act under consideration, which is in this language:

"That when an owner or part owner or person having any interest in any of the lots or lands abutting on or adjacent to such street, highway, avenue or alley, or part thereof constituting an improvement district as hereinbefore provided, upon or against which said lots or lands said levies or assessment have been made, as hereinbefore provided, shall be aggrieved by the action of the legislative body of such city or town in confirming the lists or levy or assessment rolls aforesaid, or in confirming and making such levy or assessment upon or against his lot or land, such .owner or person having an interest in such lots or lands shall have the right of appeal from the action of such legislative body to the circuit court of the county in which such city or town is located by petition duly filed setting forth the facts and claims of such petition, and such cases shall be tried by such circuit courts in the same manner as now, or may hereafter be provided for the trial of other civil cases in actions at law in this State.

"All cases appealed from justice and the county court to the circuit court are tried de novo. See cases cited on page 587, volume 1, Encyclopedic Digest of Tennessee Reports.

"Section 25, Acts of 1915, provides that appeals shall be heard in the circuit court as appeals in other civil cases are heard."

In the case of City of Rockwood v. C. N. O. & T. P. Railway Company, supra, we applied the well established rule that the trial court's finding of the issues of fact in favor of the party successful below will not be disturbed if it is supported by any material evidence, and where the evidence is reasonably susceptible of diverse

inferences, the presumption is in favor of the correctness of the finding of the trial court; but, of course, if the trial judge reached an erroneous conclusion, as a matter of law, upon undisputed and controlling facts, his judgment will be reviewed and reversed.

When the Rockwood case was heard and taken under advisement by this court, the Act of 1929, ch. 94, "to regulate the hearing of cases in the Court of Appeals," had not been passed; but it was in force when the instant case was heard and taken under advisement by this court. Said Act provides that

"In all cases taken by appeal or otherwise to the Court of Appeals from any trial court, the hearing in said appellate court shall be de novo, upon the record from the court below when the hearing in the trial court was without a jury, but there shall always be a presumption of correctness in the appellate court as to the judgment of the trial court where the material evidence is nearly evenly balanced. The transcript before the Court of Appeals in cases tried in any lower court upon oral testimony must contain motion for new trial and bill of exceptions."

However, the above quoted Act of 1929 does not affect the result in the instant case, for the reason that the facts which, in our opinion, control the determinative questions arising on the appeal are either undisputed or concluded by the finding of the trial judge "that the land in question formerly known as 'E' street, between Pine and Elm streets, was the property of the Southern Railway Company at the time it was taken and appropriated by the City of Elizabethton in opening up a new street," which finding is, in our opinion, supported by the preponderance of the evidence on that subject.

The city tenders an assignment of error through which it asserts that the finding of the trial court last above quoted was erroneous, but the city is not in a position to assign errors upon the record in this case.

Although, as we have seen, the city prayed an appeal, the appeal thus prayed was not granted and no appeal bond was given by the city. However, the city, after due notice to the attorneys of record for the railway company, filed a bond, before the hearing in this court, to secure the costs of a writ of error; but the city cannot successfully assign error upon the facts of the case, for the reason that it made no motion for a new trial below. Road Commissioners v. Railroad, 123 Tenn., 257, 130 S. W. 768; Shelton v. Wade, 139 Tenn., 685, 203 S. W. 253; Railroad v. Johnson, 114 Tenn., 632, 88 S. W. 169. See also Rules of the Supreme Court (Rule 14, subsec. 5, and Rules of the Court of Appeals (Rule 11, subsec. 5) in the Appendix to 155 Tennessee Reports.

In this court the railway company has presented two assignments of error corresponding with the two grounds of its motion for a new trial below, the first of which is that "the trial court erred in not holding that the Southern Railway Company had the right, by cross-action or counterclaim to recover of the city for the street improvement assessment, and to render judgment against the city for the difference between the value of the land taken and the street improvement assessment."

It will be remembered that the trial court pretermitted the decision of the question made by the railway company's first assignment of error, supra,—stating on the record that "the court is not fully decided that the plaintiff railway company may plead by way of recoupment or counterclaim the value of the land taken as against the street improvement assessment,"—but held that "even if this could be done, the plaintiff railway company's suit, for the value of the land taken, in its cross-action, is barred by the statute of limitations of one year."

Through its second assignment of error the railway company asserts that "the trial judge erred in holding that the cross-action of the plaintiff railway company for the value of the land taken for 'E' street is barred by the statute of limitations of one year."

On grounds of public policy, a claim for taxes due the State or a municipality is not subject to set-off or recoupment on behalf of the tax debtor. Moore v. Tate, 87 Tenn., 725, 737, 11 S. W. 935; Scovel v. Nashville, 2 Shan. Cas. 260; 34 Cyc., p. 692; Note, 33 L. R. A. (N. S.), pp. 382-384.

In 26 R. C. L., p. 378, par. 337, it is said:

> "It is well settled that no right exists in law or equity to set off against taxes a debt of equal amount due to the taxpayer from the municipality to which the tax is payable. Taxes are levied to raise money for specific purposes, as indicated by the appropriations of the current year, and a taxpayer cannot, by exercising the right of set-off, divert the taxes to another purpose, namely, the payment of the debt due to him."

Special assessments under the abutting property law constitute a species of taxation (25 R. C. L., pp. 82-83, par. 2; City of Memphis v. Hill, 141 Tenn., 250, 256, 208 S. W. 613), and the levying of such assessments on abutting property for street improvements is an exercise of the taxing power, rather than an exercise of the power of eminent domain or the police power. 25 R. C. L., pp. 85-86; Arnold v. Knoxville, 115 Tenn., 195, 90 S. W. 469, 3 L. R. A. (N. S.), 837, 5 Anno. Cas. 881.

It has been frequently held by the courts of other jurisdictions that a demand on behalf of the property owner for damages in improving the street cannot be set up as a counterclaim in a suit

by the municipality on an improvement assessment, unless expressly so authorized by statute, as that would divert the tax from its special purpose. See Note, 33 L. R. A. (N. S.), p. 385.

We are not aware of any authority contra. The Kentucky case of Board of Councilmen of City of Frankfort v. Brislan, 104 S. W., 311, is cited in the brief for the railway company as authority supporting the right of set-off or counterclaim in the instant case. In the last paragraph of the opinion in that case, the court said: "The counterclaim presented by appellee set up a good defense, and upon the trial of the case he should be allowed to prove the damage, if any, to his property by reason of the taking and injury complained of." There is, in the opinion from which we have just quoted, no statement or discussion of the grounds on which the court placed the ruling thus made; but there was a petition for a rehearing in that case, and at a later date the court handed down an opinion in response to the petition to rehear, which opinion is reported in 104 S. W., 1199, and which reads as follows:

"In a petition for rehearing the point is made on behalf of appellant that appellee should not have the right to assert, as against the city's claim for street improvements, the counterclaim for damages. The improvement was not made by the city, but by a contractor. After completing the contract, the contractor assigned his claim to appellant, and the rule that would deny a property owner the right to assert a counterclaim or set-off against the city, if the work had been done by it and it was seeking to enforce its lien, does not apply. As assignee of the contractor's claim, the city occupies no better position than the contractor, and appellee can set up as against it any claim for damages that he could have asserted against the contractor. Ky. St., p. 474; Civ. Code Prac., p. 19. The doctrine that the property owner may rely upon a set-off or counterclaim in a suit by a contractor is expressly decided in Bodly v. Finley's Ex'r, 64 S. W. 439, 23 Ky. Law Rep. 851.

"The petition for rehearing is overruled."

In the case of Bodley v. Finley's Executor, cited in Frankfort v. Brislan, supra, the Kentucky court, although holding that the property owner may, under the Kentucky statute, interpose a set-off or counterclaim against a suit by a contractor makes it plain that such set-off or counterclaim cannot be successfully pleaded against a suit by a municipality upon an assessment for local improvements. It is there said:

"This brings us to a consideration of the question whether a set-off or counterclaim can be pleaded against a suit upon an assessment for local improvement. In Purdy v. Drake (Ky.), 32 S. W. 939, the question was presented, but not decided, as

the set-off there attempted to be pleaded was not sustained by the proof. In Dill. Mun. Corp., p. 810, it is said: 'As to agreements between the corporation and a contractor to do the work the abutters or property owners on whom the expense falls are not parties, but are brought into direct relation with the proceeding for the local improvement for the first time when the assessment is made. An assessment is a tax levied by the corporation upon property to defray the expense of the improvement, and the suit to collect it (though brought by the contractor under authority given for that purpose) is not the subject of set-off or counterclaim.' The cases cited in support of the text above quoted are California cases, to the effect, in general, that such an assessment is a tax 'levied by the corporation upon certain property to defray the expenses of the improvement of a street adjacent to the property.' Said the court, in Himmelmann v. Spanagel, 39 Cal. 393: 'The origin, obligatory force, and whole nature of a tax is such that it is impossible to conceive of a demand that might be set off against it, unless expressly so authorized by statute. No case has been cited, and probably none can be found, which authorizes a defendant, when sued for a municipal assessment or tax, to set up a counterclaim.' Undoubtedly, this reasoning applies with full force not only to cases of general taxation, but also to cases where the municipality is asserting against the citizen a claim for a special assessment for local improvement, for which it has paid or become bound to the contractor. On grounds of public policy, the sovereign in the exercise of the power of taxation for governmental purposes must not be compelled to stay its proceedings in order to adjust its indebtedness to a citizen. And in this State, while we hold that these special assessments are not included under the designation of taxation in certain constitutional provisions, we nevertheless recognize that their imposition is an exercise of the sovereign power of taxation. Richardson v. Mehler (Ky.), 63 S. W. 957.''

It is thus seen that the Kentucky case of Frankfort v. Brislan, supra, is not authority for the contention of the railway company made through its first assignment of error in the instant case.

The Act of 1913, by virtue of which the assessment here in question was made, provides that all assessments shall be due and payable within thirty days after they are made final, but that, at the election of the property owner, such an assessment may be paid in five annual installments, with interest at the rate of six per cent per annum, payable semi-annually; that when the legislative body (in this case the city council) shall have ordered the construction of any improvement in accordance with the terms of said Act,

the legislative body shall have the power and authority, for the purpose of providing means to pay that portion of the cost of said improvement not chargeable to the municipality proper, to issue negotiable bonds of the municipality to the amount in par value not exceeding two-thirds of the estimated cost of any such improvement or improvements (this being the proportion of the cost apportionable to the abutting property owners), which cost shall for this purpose be estimated by the legislative body in the ordinance authorizing the issue of said bonds; that such bonds shall run for one, two, three, four, and five years, and bear interest at a rate not exceeding six per centum per annum, as may be designated in the bonds, payable semi-annually, and the municipality may, in its discretion, provide in such ordinances that any bonds shall be payable at the option of the municipality at any interest-bearing period.

It is further provided that "such bonds shall be the absolute and general obligations of the municipality," but by the next sentence (in section 9) it is provided that "the legislative body of the municipality shall provide by ordinance that the assessments levied upon the property abutting on the streets, alleys, or highways, or parts thereof, in respect to which any such bonds are issued, shall be set apart as a fund for the payment of such bonds and interest."

It is further provided (in section 12) "that the proceeds arising from the collection of assessments levied for improvements authorized by this Act shall be and constitute a separate and distinct fund; and such fund, together with its accumulations, is hereby pledged for the payment of the bonds and interest coupons issued for the improvement or improvements from the assessments of which said fund arises, and shall be applied exclusively to the payment of said bonds and coupons."

It is obvious (1) that the funds to be derived from assessments against abutting property made under the aforesaid Act of 1913 are, by that statute, specifically set apart and devoted to the payment of the cost of the improvement of the street on which such property abuts, and (2) that to allow the set-off or counterclaim interposed by the railway company in this case would (to the extent of such set-off) necessarily "divert the tax from its special purpose."

For the reasons stated, we hold that the railway company was not entitled to set up, by cross-action or counterclaim, the value of the land taken against the claim of the city for the street improvement assessment, and the railway company's first assignment of error is, therefore, overruled.

It necessarily follows from our disposition of the railway company's first assignment of error that its second assignment is immaterial, and for that reason the second assignment is overruled.

Where the trial court renders a proper judgment in a case, but rests its decision upon an erroneous ground, the appellate court will affirm the judgment, basing its decision upon what it conceives to be the correct theory. Brooks v. Paper Co., 94 Tenn., 701, 705, 31 S. W. 160; Railway Company v. Wilson, 90 Tenn., 271, 16 S. W., 613; Chambers v. Chambers, 92 Tenn., 707, 714, 23 S. W., 67; Sheafer v. Mitchell, 109 Tenn., 181, 183, 71 S. W., 86; Terrell v. Murray, 2 Yerg., 384.

No claim is made in this case that any of the property of the railway company here involved is a part of its right of way or is essential to the operation of its railroad; hence the ruling in the case of City of Alcoa v. Railroad, 152 Tenn., 202, 274 S. W., 1110, is not applicable.

It results that the judgment of the circuit court sustaining the assessment in question as good and valid, and taxing the costs of that court against the railway company, is affirmed, and the cause will be remanded to the circuit court of Carter county, with directions to issue procedendo accordingly to the city council of the City of Elizabethton.

The costs of the appeal will be adjudged against the Southern Railway Company and the sureties on its appeal bond, and the costs of the writ of error sued out by the City of Elizabethton will be adjudged against the city and the sureties on its bond for the writ of error.

DeWitt and Portrum, JJ., concur.