F. M. SEARIGHT *et al. v.* WHITE SEWING MACH. CO.

*(Jackson.* April Term, 1918.)

1. **JUDICIAL SALES. Default of purchaser. Right of debtor.**
Where at the instance of his creditors a debtor's land is sold through chancery on time without redemption and the sale is confirmed, the debtor is deprived of title and all beneficial interest and is entitled to be credited with the proceeds of such sale, although the purchaser defaults in note given therefor and land is again sold for a smaller sum, in view of Thompson's Shannon's Code, sections 5915-5917, 6301-6303, as to power of courts having jurisdiction to sell land to vest and divest title, etc. *(Post, p.* 53.)

Cases cited and approved: Camp v. Riddle, 128 Tenn., 294; Griffith v. Philips, 77 Tenn., 420; Wilkins v. McCorkle, 112 Tenn., 688; Iron & Coal Co. v. Schwoon, 124 Tenn., 176; Bleidorn v. Pilot Mountain C. & M. Co., 89 Tenn., 166.

Codes cited and construed: Secs. 5915-5917, 6301-6303 (T.-S.).

2. **JUDICIAL SALES. Sale on time. Liability of commissioner.**
Where a master sells land of a debtor at instance of creditors on time, it is his duty to accept only good and solvent sureties on the notes, and for any failure in this regard he is personally liable to the creditors. *(Post, p.* 53.)

3. **JUDICIAL SALES. Sale on time. Loss from insolvency.**
Where master, pursuant to decree of chancery and at the instance of creditors, sells land of a debtor on time and accepts solvent sureties on notes given therefor, loss occurring from subsequent insolvency of sureties is that of the creditors, and not of master or debtor. *(Post, pp.* 53-58.)

4. **EQUITY. Bill of review. Matters reviewable. Erroneous decision.**
Error of court in disallowing debtor a credit for proceeds of first sale of land on time at instance of creditors, and crediting

him only with the proceeds of a subsequent sale for a less sum after default of purchaser, can be relieved against by a bill of review. (*Post, p.* 58.)

## FROM OBION.

Appeal from the Chancery Court of Obion County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —HON. COLIN P. McKINNEY, Chancellor.

JOHN H. LECHLEITER and H. H. BARR, for appellant.

KNIGHT & BEASLEY, for defendant appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The question to be determined in this case arises on a bill of review. We shall summarize its allegations so far as necessary to present the matter for decision.

It appears from the bill that the complainants F. M. Searight and W. G. Harris purchased certain real estate in Obion county from one Waynick, at the price of about $20,000. They paid $7,500 in cash. The rest of the consideration was covered by sundry lien debts. The last of these in the order of priority was that of the defendant White Sewing Machine Company. The amount due this company not hav-

ing been paid, it filed its original bill to subject the land to the payment of all the liens. Such proceedings were had as that a decree was entered directing a sale of the land, and at this sale one B. P. Hubbard became the purchaser, at the price of $11,890. The sale was made on seven months' time, without redemption, pursuant to the decree. Hubbard executed his note for $11,890, the amount he bid on the land, and gave as his surety one E. P. Boyd. The master, in making the sale, retained a lien on the land as required by the decree under which the sale was made. When this note matured it was not paid. Thereupon, on the 4th of April, 1917, a decree was entered directing that the land should be again sold for the collection of Hubbard's note and interest, amounting, at that time, to $12,323.97. The decree further directed that when the purchase money from this latter sale should come in it should be paid out, along with certain other funds not necessary to specifically mention, to the creditors, according to their respective priorities, and that for any balance execution should issue against Harris and Searight. At this latter sale the land brought only $10,000.

The effect of the order just mentioned was to deprive Harris and Searight of a credit for the difference between the amount which the land brought at the first sale and that which it brought at the second sale; this difference being $1,890.

An execution was issued against Harris and Searight on a basis of allowing them credit only for the proceeds of the sale made to enforce the lien against Hubbard, and this was enjoined by a writ issued under the present bill..

It is insisted by the complainants Harris and Searight that they were entitled to a credit for the amount which the first sale brought, less the taxes and costs, and the decree of the chancellor refusing this basis and directing the money to be paid out on the other basis is the matter complained of as error apparent on the face of the decree.

There was a demurrer filed to the bill on the ground that it did not show any error, and if there was error it was such as could not be corrected by a bill of review. The chancellor sustained the demurrer and dismissed the bill. On appeal to the court of civil appeals this decree was reversed and the cause remanded. The case was then brought to this court on the writ of *certiorari.*.

The question presented is whether the original judgment should have been credited with the proceeds of the sale made to Hubbard, or only with the proceeds of the sale subsequently made to enforce the lien of Hubbard's seven months' note that he executed when he bought the land at the master's sale.

The controlling principle we understand to be this: When a debtor's real estate has been seized by the law, through the action of its courts, at the instance of his creditors, and finally sold in such

way as to deprive him of the title and all beneficial interest therein, he is entitled to a credit on the debts embraced in the action, to the full extent of the sum realized at the sale, less taxes and costs of suit. On a cash sale nobody could doubt the soundness of this proposition. Nor can its application be diverted by the fact that the sale, at the creditor's instance, was made on time. It would be unjust, under such circumstances, to force on the debtor the risk of the credit extended to the purchaser. To say nothing of the estoppel against the creditor arising out of his own act of asking a sale on time and without redemption, the debtor is deprived of his property just as surely in the one case as in the other, that is, whether the sale be made for cash or on credit. When a sale of land is made through a court of chancery, and is confirmed, and title divested out of the debtor and vested in the purchaser, whether by decree of divestiture and vestiture, or by deed made by the master or commissioner under and pursuant to the order of the court, the land is just as surely lost to the debtor as if he had made the deed himself, in person. From the moment of such passing of title the land becomes the property of the purchaser; he is entitled to the rents thenceforward, and unless placed in possession by the court making the sale he is entitled to bring ejectment, at once, against the former owner, and put him out of possession. On a cash sale nobody doubts that the money would take the place of the land, and stand for distribution

Searight v. White Sewing Mach. Co.

among the creditors, the surplus, if any, going to the debtor or former owner of the land. The promissory notes realized on a credit sale must occupy the same relation to the parties and to the court. They take the place of the land. It cannot be otherwise. The general custom in this State on such credit sales is to provide, in the decree, that the master, or commissioner, shall take notes with personal surety, or sureties, and retain a lien on the land for the purchase money. That course was taken with the sale under consideration here. In executing such a decree it is the duty of the master or commissioner to accept only good and solvent sureties on the notes. When he makes his report to the court it is presumed that the sureties are of this character unless an exception be filed raising the question of solvency. On confirmation of the report the decree divests and vests title, and retains a lien on the land for the notes. If the notes are not paid at maturity, a judgment by motion is rendered on them against the purchaser and his sureties, and a decree entered ordering the land to be sold for cash and without redemption to pay the judgment. If the land fail to bring enough to pay the judgment, execution is awarded for the balance. If the balance so due cannot be collected by reason of the insolvency of the defendants in the judgment, the loss is that of the parties interested in the fund; that is, in the present case, the loss of the creditors. If the master was in default in taking insufficient sureties the creditors must look to him

to make good the loss so sustained. If the insolvency occurred after the execution of the notes, leaving the master exonerated of blame, still the loss would be that of the creditors.

The rule is a very familiar one in cases where an execution is levied on personal property of the debtor—too familiar to justify the citation of authority. In such cases, even the levy itself, without sale of the property, is sufficient to secure the debtor a credit for the value of the goods levied on, if not returned to him. The levy vests the title in the sheriff, or other levying officer, and the debtor, being so deprived, is entitled to his credit, even though the property should thereafter perish without fault of either the officer or the plaintiff in the execution. *A fortiori* where the goods are sold, whether for cash, or on time. Such sales are regularly made for cash, but it is competent for the levying officer to sell on time with the consent of the execution plaintiff; the latter taking the risk of the property bringing its value. On such a sale having been effected, and the note proving insolvent, it would hardly be contended that the execution debtor could be saddled with any part of the loss.

Land subject to the payment of debts by proceedings in chancery differs from personal property subjected by execution, in respect of the question we are discussing, only as to the stage at which the debtor loses the title to his property. In the case of an execution levy on personalty, he loses title when the

levy is made. In the case of realty subjected in chancery, he loses title only when a sale has been effected, report thereof made to the court, confirmation of the report had, and divestiture of the debtor's title and vestiture in the purchaser accomplished, whether by decree or by deed made under the order of the court, or, when without deed or decree divesting and vesting title, after confirmation of the report of sale and order on the master to make a deed on payment of the purchase money a reasonable time has elapsed during which the master has failed to make the deed as directed. *Camp* v. *Riddle,* 128 Tenn., 294, 301-303, 160 S. W., 844, Ann. Cas., 1915C, 145. And see *Griffith* v. *Philips,* 9 Lea (77 Tenn.), 420, 421. Such decree divesting and vesting title is, in all respects, equivalent to a deed executed by the owner of the property to the purchaser at the court sale. Shannon's Code (Thompson's Edition) sections 5915, 5916, 6301, 6302, 6303; *Wilkins.* v. *Mc-Corkle,* 112 Tenn., 688, 705, 80 S. W., 834; *Iron & Coal Co.* v. *Schwoon,* 124 Tenn., 176, 204, 135 S. W., 785; *Bleidorn* v. *Pilot Mountain C. & M. Co.,* 89 Tenn., 166, 196, 15 S. W., 737. And see Gibson's Suits in Ch. (2 Ed.), sections 649, 1164. But of course such a deed or decree, made under a sale *in invitum,* would not import any covenants on the part of the former owner, but the purchaser will always, on application, be granted ample time before confirmation to investigate the title. 16 R. C. L., p. 122, section 87. The usual covenants are implied in

such court transfer of title only when the sale is made on voluntary application of the owner or owners. Shannon's Code (Thompson's Edition) section 5917; 16 R. C. L., pp. 138-141, sections 101 and 102.

It seems clear from what has been said that the decree disallowing the credit claimed by complainants out of the sum realized on the first sale, and the decree sustaining the demurrer to the bill of review, were both erroneous.

We are of the opinion that the error complained of is one which not only violates the settled practice of the court of chancery, but also rules of law necessarily embraced within the sections of the Code and the decisions cited. It is far from being a merely formal or trivial matter, but is such as can be relieved against by a bill of review.

The result is that the decree of the court of civil appeals reversing the chancellor must be affirmed, and the cause remanded for issue and further proceedings.

The defendant will pay the costs of the appeal.