TREADWELL REALTY CO. *v.* CITY OF MEMPHIS.

*(Nashville,* December Term, 1937.)

Opinion filed May 27, 1938.

ERNEST WILLIAMS, JR., and ROYDEN DIXON, both of Memphis, for appellant.

WILLIAM GERBER, K. C. LARKEY, and ED KUHN, all of Memphis, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court sustaining a demurrer to and dismissing a petition for *certiorari* to review the action of the Memphis Board of Equalization fixing the value of petitioner's property for assessment. The City tax assessor had appraised the value at $114,500. Upon application for review to the Board of Equalization, that body confirmed this appraisal.

Petitioner charged that the property had a fair cash value of $35,000 only; and that the refusal of the Board of Equalization to adopt this valuation, at which the property had been recently sold and purchased by petitioner at a fair sale, after full advertisement and publicity, and special efforts to secure a larger price, "in legal effect is the equivalent of intention or fraudulent pur-

pose to overvalue the property''; also, that the value fixed by the Board ''amounts to confiscation of petitioner's property and constitutes the taking of petitioner's property without due process of law'', all of which is in violation of our statute providing that all property ''shall be assessed at its actual cash value'', of the State constitutional provision that ''all property shall be taxed according to its value,'' and of the due process clause of the Federal Constitution. No charge of discrimination is made, that is, of inequality in the assessment of petitioner's property as compared to the assessment of like and adjacent property.

The action of the Board of Equalization is made final by the governing statute, and it is too well settled for discussion that no right of review by *certiorari* exists, unless it be shown that the Board has exceeded its jurisdiction, or acted illegally, or fraudulently. It appears from the petition that petitioner was given a hearing before the Board and that all the facts set out in the petition as to the sale at which petitioner purchased were submitted to the Board. Petitioner thus had its day in the Court fixed by law. Our cases on this subject have been recently reviewed by this Court in an opinion by the Chief Justice in *Savage Co.* v. *Knoxville,* 167 Tenn., 642, 72 S. W. (2d), 1057, in which, on facts somewhat similar to those here presented, *certiorari* was denied. In that case it was said:

''The petition charges that the board of equalization acted illegally, beyond its jurisdiction, arbitrarily, and discriminatorily, but the only specification is that, while the board of equalization appraised other property in the city of Knoxville at its cash value, it appraised the property of the petitioner at $18,000 in excess of its cash

value. No fraud is charged against the board of equalization, nor does it appear that in its procedure that body has disregarded any statutory provisions, except that the petitioner charges that the constitutional and statutory provisions that all property should be assessed equally and at its value were ignored as to petitioner's property.

"Obviously, therefore, the petition is merely an effort to have the courts review, upon petition for *certiorari,* the valuation placed upon the property for purposes of taxation by the duly constituted taxing authorities. Nothing is better settled in this jurisdiction, and everywhere we believe, than that the courts will not undertake such a review, nothing else appearing. As said in the cases, value is a matter of opinion, and the opinion of the courts is not likely to be any better than the opinion of tribunals specially created to fix property values. It is competent for the Legislature to provide that the findings of such tribunals shall be final so long as they act within their jurisdiction, observe statutory requirements, and there is no fraud.

"In *Tomlinson* v. *Board of Equalization,* 88 Tenn., 1, 12 S. W., 414, 6 L. R. A., 207, it was expressly held that the action of a county board of equalization in determining the taxable value of property, being made final by express statutory provision, could not be reviewed by writ of *certiorari* at the suit of a taxpayer, where the board had not, with reference to his assessment, exceeded its jurisdiction nor acted illegally."

The opinion then cites and reviews *Staples* v. *Brown,* 113 Tenn., 639, 85 S. W., 254; *Carriger v. Mayor, etc., of Morristown,* 148 Tenn., 585, 256 S. W., 883; *Mossy Creek*

*Bank* v. *Jefferson County,* 153 Tenn., 332, 284 S. W., 64, and other decisions.

As before stated, there is in the petition before us a general charge, by way of conclusion, of fraud "in legal effect" in over-valuing the petitioner's property and of refusing to accept as conclusive the evidence presented by petitioner of a recent sale price, but upon analysis it is seen that the only specific complaint is that this property of petitioner has been assessed at largely more than its fair cash value as required by law.

The apparent theory of petitioner, plausibly advanced, is (1) that the discrepancy between the value as demonstrated by the recent sale, which petitioner contends is conclusive, evidence of cash value, and the assessment fixed upon it, is so great as to support a conclusion of fraudulent purpose on the part of the Board; and (2) that the assessment is such an excessive over-valuation as to amount to confiscation, the taking of petitioner's property without due process.

■ ■ First, with special reference to the claim of confiscation in violation of the due process clause, it can be only when inequality or discrimination is shown that protection under the Fourteenth Amendment to the Federal Constitution can by any possibility be rightfully invoked. The two factors of assessment and of rate enter into and control the amount of the tax required to be paid. Obviously, if all property is equalized in assessment, no unequal burden is placed on any taxpayer and he has no complaint under the Constitution, either Federal or State. Mr. Justice STONE clearly shows this in his dissenting opinion, referred to in the briefs, in *Great Northern Ry. Co.* v. *Weeks,* 297 U. S., 135, 56 S. Ct., 426, 80 L. Ed., 532. And, so it has been said of our State con-

stitutional provisions that "all property shall be taxed according to its value" (article 2, section 28) that its "sole and manifest purpose . . . was to secure uniformity and equality of burden," etc. *Taylor* v. *Louisville & N. R. Co.*, 6 Cir., 88 F., 350, 364.

There is no showing here that the adjacent property owned by others is not assessed on the same valuation basis as that applied to petitioner's property.

There is no claim of want of jurisdiction, or of illegality in procedure; and, as before said, the charge of fraud, "in legal effect," comes down, upon analysis, to the insistence that the evidence of fair value afforded by the showing of the purchase price should have been accepted by the Board and that its failure so to do amounted "in effect" to fraud.

While the discrepancy shown in this case between the sale or purchase price and the assessment is very large, we are unable to see that the issue thus presented does not involve the merits, does not require that the judgment,—really opinion,—of the Court shall be substituted for that of the Board to whose discretion the question is by law delegated.

 The argument is that our statute (Code, sections 1349, 1351) defines "actual cash value" as "the amount of money the property would sell for, if sold at a fair, voluntary sale;" that this property was sold at a fair, voluntary sale, and this having been shown to the Board it was conclusively bound thereby.

The authorities generally treat sales by Receivers, arms of the Court, as judicial sales, and judicial sales are classed as involuntary, rather than voluntary. *Searight* v. *White Sewing Machine Co.*, 140 Tenn., 50, 203 S. W., 330; 35 C. J., p. 8. But, regardless of this, we think it

is for the Board of Equalization to determine whether or not in its judgment, in any given case, a sale, whether made by a Court, or any of its officers, or by an individual to another, was a "fair, voluntary sale" in the meaning of the statute; and whether or not its appraisal shall be controlled thereby. The Board, in the proper exercise of its jurisdiction, may look to all the facts surrounding such a sale, and in connection therewith may consider its personal knowledge of the property involved, much as a jury of view might, and, also, any other information, facts or circumstances before it which in its judgment bear upon the question of "actual cash value."

This Board had before it the assessment records of all City property. This included a showing of the values fixed on property in Memphis adjacent, or contiguous, to that of petitioner, as to which, so far as this record shows, no complaint is made by the owners; also, a sworn statement by the assessor, required by statute (Code, section 1375), which it will be presumed conformed to the statute and was in the records before the Board. In this statement, required to be made under oath, the assessor says, "I have estimated the value of all property [which includes petitioner's] . . . at its actual cash value as prescribed by law, to the best of my knowledge and ability, without fear, favor or affection." Here then, before the Board, was the sworn testimony of the man presumably most familiar with the values of property in Memphis. This was some evidence in support of the valuation at which petitioner's property was appraised.

It will be observed that the sale relied on to fix the valuation was not only a Receiver's sale, but was a cash sale, and it is a matter of common knowledge that

sales for cash of properties of large value do not bring full prices, and it is significant that, in recognition of the disadvantage of cash sales, our statutes require that sales made by our Courts in bar of the equity of redemption shall be made on time. If it should be conceded, as it is not, that the Board of Equalization may be required to hear 'or consider any specific evidence that may be offered (see *Tomlinson* v. *Board of Equalization, supra*) certainly, the effect or weight to be given any such evidence is a matter for the judgment of the Board, and not subject to Court review. We can not say that the facts set forth in this petition support the conclusion charged, that, in legal effect, the failure of the Board to reduce this assessment to $35,000 was "the equivalent of intention or fraudulent purpose to over value the property." Conceding that a case might be presented of such excessive over-valuation as to justify a conclusion of fraudulent over appraisement, this deduction could hardly be made when no discrimination is shown, and when the valuation adopted by the Board is in line with that given to other adjacent and surrounding property. Nor, for reasons already suggested, can we agree that any constitutional rights of petitioner have been violated. We have considered the case of *Great Northern Railway Co.* v. *Weeks, supra,* relied on for petitioner, but, conceding the correctness of the holding of the majority, strongly dissented from by Justices STONE, BRANDEIS and CARDOZO, the situation dealt with was peculiar and wholly different on its facts from that here presented and can have no controlling effect here.

The Board having acted within its jurisdiction, and neither illegally, nor fraudulently, the Courts are

without power to review or revise on the merits its appraisal.

The judgment of the Circuit Court must be affirmed.