CITY OF KNOXVILLE *v.* HAMILTON NAT. BANK OF KNOXVILLE.

(*Knoxville,* September Term, 1942.)

Opinion filed November 7, 1942.

O. M. TATE, JR., of Knoxville, for plaintiff in error.

CATES, SMITH & LONG, of Knoxville, for defendant in error.

Mr. Justice Prewitt delivered the opinion of the Court.

The Hamilton National Bank of Knoxville filed the petition for *certiorari* in the Circuit Court of Knox County against the City of Knoxville, seeking to have declared illegal and void the 1942 tax assessment made by the city against the bank's shares of stock, the 1942 assessment being fixed at $1,664,000, whereas the assessment for the years 1939, 1940 and 1941 had been $1,250,000. The city filed a motion to dismiss the petition, which was overruled and the petition sustained. After the motion for a new trial was overruled, the city appealed in error here.

The case involves a construction of section 1391 of the Code, which provides as follows: "The shares of stock of stockholders of any bank or banking association, savings bank or loan company, or insurance company, or investment company, or cemetery company, or company or incorporation doing business in this State, other than such as are defined and assessable under sections 1404-15 inclusive, whether domestic or foreign shall be assessed and taxed for state, county and municipal purposes as the personal property of the stockholders, whether they reside within or without the state; provided, however, the assessment of such shares of stock as the property of the stockholders shall be in lieu of any assessment or taxation of the capital stock or corporate property of such corporation, or association. Shares of stock assessable under this section shall be assessed at not less than the actual cash value of the same, less the assessed value of realty and value of personal property otherwise assessed or returned for taxation, which actual cash value of shares of stock

shall be computed by looking to and considering the market value; and if no market value, the actual value of the shares of stock, or from any other evidence of the value of same.''

The city contends that the section above quoted means that the stock shall be assessed at its actual value, and that the city is allowed to take into consideration the book value and the liquidating value, and that other elements of value should be given consideration in assessing the stock.

The contention of the bank in behalf of itself and the stockholders is that when the shares of stock are shown to have an established market value through sales and purchases by willing sellers and buyers under normal conditions and in the ordinary course of trade, the only question for the assessing authority to determine is what the market value is under the standard of value as laid down and fixed by the statute.

In the transcript of the testimony before the Tax Commission, at pages 3 and 4, the following appears:

''Mr. Tate: I think we might state this. We do not insist that the market value of the stock is greater than $250 to $275. But we do say that the actual cash value is greater than that, and in considering the actual cash value the market value has been considered. I do not feel that we are bound by the market value. . . .

''Capt. Long: In law there is no distinction between the actual and market value. The market value is what is considered the actual value. In other words, a thing is worth what it will bring. If the highest price is $275, . then the value of the stock in no event could be higher than $275 per share. We must look to the market value to determine the actual cash value. Let us consider some other well known stocks on the market. Mr. Davidson,

what is the book value and the market value of U. S. Steel?

"Mr. Davidson: The book value is $120 and it is now selling at around $50 to $53 a share.

"Capt. Long: What about Southern Railway?

"Mr. Davidson: Southern Railway has a book value of around $140 a share and the stock sells at about $20 a share.

"Capt. Long: Give us an example on the other side of the fence.

"Mr. Davidson: Coca Cola has a book value of $12 or $13 a share and it sells at $75 a share or more."

From the record it seems that there is no serious dispute on the price range of the stock as being from $250 to $275 per share.

It is conceded by both the city and the bank that there are no Tennessee cases directly in point.

However, the city insists that the principles laid down in *Treadwell Realty Co.* v. *City of Memphis,* 173 Tenn., 168, 116 S. W. (2d), 997, are in point here. That case involved a review of a decision of the Board of Equalization with reference to the value of certain real estate in the City of Memphis, and it was held that the right to review by *certiorari* does not lie unless it is shown that the Board has exceeded its jurisdiction or acted illegally or fraudulently. It was also held that the Board, in the proper exercise of its jurisdiction, may look to all the facts surrounding the sale of the property and in connection therewith may consider its personal knowledge of the property involved, and also any other information or circumstances before it which in its judgment bear upon the question of the actual cash value of the property for the purpose of taxation. However, the section of the statute in question in the instant case was not

before the court. Here there is no charge that inequality or discrimination was shown.

The latter part of the last sentence of Code, section 1391, reads as follows: ". . . which actual cash value of shares of stock shall be computed by looking to and considering the market value; and if no market value, the actual value of the shares of stock, or from any other evidence of the value of same."

We are of opinion that the above quotation from said section enables the assessing authority, in arriving at the actual value of stock, to consider "any other evidence of the value of same"; but where, as in this case, it is shown that the stock has a market value, then the Legislature intended that the market value as shown should be the test in making the assessment, and other elements not considered.

It, therefore, results that we find no error in the judgment of the trial court in sustaining the petition for *certiorari*, and his action is accordingly affirmed.

## CONCURRING OPINION.

MR. JUSTICE CHAMBLISS delivered the concurring opinion.

Is the assessor of bank stock limited to the "market value" of the shares,—required to consider this evidence of actual value only,—by the concluding language of Code, Section 1391 (Act of 1927), reading: "Shares of stock assessable under this section shall be assessed at not less than the actual cash value of the same, less the assessed value of realty and value of personal property otherwise assessed or returned for taxation, which actual cash value of shares of stock shall be computed by looking to and considering the market value; and if no

market value, the actual value of the shares of stock, or from any other evidence of the value of same. (1927, ch. 39.)''

Aware, as I am, of the necessity of looking to other sources, and considering other evidences, under conditions which quite frequently exist affecting present market value, if the primary and dominant requirement of the law that such property ''shall be assessed at not less than the actual cash value,'' etc., is to be complied with, I feel sure the law makers did not use this language with full appreciation of its sharply restrictive import. However, I am constrained by the explicit language employed, and the rule that tax laws must be construed, in case of doubt, favorably to the taxpayer ·(*Sloan v. City of Columbia,* 144 Tenn., 197, 232 S. W., 663), to agree that, an existing market value being conceded, it must be adopted and applied as the sole criterion.

Not only does Section 1391 provide affirmatively that the value for assessment ''shall be computed by looking to and considering the market value''; but the Act proceeds to provide expressly for an alternative course, ''if no market value,'' thus strengthening the mandate.

Moreover, it is significant that in Section 1394, which calls for filing with the assessor of a schedule for his examination, in detailing the items to be set forth, subsection (3) provides: ''Value of shares.—The market value; and if no market value, the actual value,'' etc.

Thus, if the shares have a market value, this is all that the schedule need show as to the value for assessment. Here then is a statutory restatement which directly supports the construction limiting the assessor to the market value, if there be one established to his reasonable satisfaction. We are dealing here with a case

in which the existence of a market value is conceded to have been satisfactorily established, and it is in such a case that I agree that the rule followed in the majority opinion must apply. Certainly, however, if an arbitrary limitation to ''market value'' is to be the governing rule, the proof should be clear in every case that a market value exists, not fixed by private, personal, occasional and sporadic sales, but by repeated transactions, more or less known in the local financial circles.