# CLAUDE E. CLARK et al. v. LINCOLN COUNTY et al.—387S.W.(2d)360.

Middle Section. June 26, 1964.

Certiorari Denied by Supreme Court November 2, 1964.

14

Gates & Bigham, Lewisburg, for complainants.

Edwin F. Hunt, Boult, Hunt, Cummings & Conners, James I. Vance Berry, Nashville, for defendants.

## I

SHRIVER, J.  Complainants as resident landowners and taxpayers filed their bill in the Chancery Court of Lincoln County on behalf of themselves and all the other landowners and taxpayers of the County and named, as defendants, Lincoln County, David C. Sloan, County Judge, and J. C. Patrick, Trustee, seeking a declaration by the Court that there had been no assessment of real property in the County for the year 1961 and praying for injunctive and other relief appropriate to such a declaration.

The situation grew out of the fact that in October 1960 Lincoln County entered into a contract with a firm of commercial engineers and appraisers, to furnish appraisals of all real property in the County. It was alleged that, from the beginning of the appraisal program, one Clay Cooper, who had no official position with Lin-

coln County, had, with the aid and assistance of the County Judge, set himself up as final arbiter of land values in Lincoln County and that he and his assistants had seized the records of the duly elected Tax Assessor of the County and that the Tax Assessor had made no assessments for the year 1961. It was also alleged that the County Board of Equalization afforded the taxpayers no hearing as required by law which conduct of the Board was fraudulent and that said Board had no jurisdiction to act on anything because there were no assessments to equalize and that the complainants and other taxpayers of the County were about to be deprived of their property without due process of law in violation of the Federal and State Constitutions; that this suit was necessary in order to prevent a multiplicity of suits.

The prayers of the bill were for a general declaration of the rights of the parties; for a specific declaration that there had been no assessment of taxes in Lincoln County for the year 1961; that at the hearing an injunction issue to restrain the County Trustee from collecting any taxes based on the Cooper appraisals; that any taxpayer who had paid taxes prior to the conclusion of this suit based on Cooper's appraisals recover the amount so paid, and for general relief.

A demurer coupled with the answer was overruled. The answer denied the material allegations of the bill except those with respect to the status of the parties and some other undisputed matters.

The cause was heard before Chancellor John D. Templeton who sustained the bill and enjoined the Trustee from collecting any taxes that remained unpaid on the 1961 assessment roll and ordered a reference to the Master to determine what 1961 taxes had been collected since

April 1, 1962, and ordered a judgment entered against the County for the amount of taxes paid on said assessment, provided, however, that any taxpayer might waive his right and rely on the levy against him in full discharge of his 1961 taxes.

After entry of the above decree, the Quarterly County Court of Lincoln County, acting under and by virtue of the authority of Section 67-1220 T.C.A., passed a resolution declaring that the assessment roll held to be void by the decree of the Chancellor was the tax assessment for Lincoln County for the year 1961.

At the same called session the Quarterly County Court adopted another resolution calling the County Board of Equalization into session beginning May 28, 1962, and extending the time of its sessions until July 5, 1962. A copy of said resolution was attached to a Supplemental Bill which was filed by the complainants herein on June 28, 1962, making members of the County Board of Equalization parties and asking that all temporary injunctions theretofore issued be made permanent.

Answers were filed to this amended and Supplemental Bill and thereafter, the cause was heard before Chancellor Robert L. Keele on oral testimony together with arguments and briefs of counsel, whereupon, the Chancellor on March 9, 1963 filed a memorandum opinion in which he very ably and thoroughly discussed the facts and the law involved and reached the conclusion that the bill of the complainants should be dismissed and relief denied to them.

## CHANCELLOR'S OPINION

The well reasoned opinion of the Chancellor is as follows;

"This cause is before the Court for determination of the issues made by the supplemental bill and answers thereto. Heretofore on August 28, 1962, this same cause was before this Court upon a motion filed by the defendants to dissolve the temporary injunction based on the supplemental bill. A decree was entered September 7, 1962, reflecting the action of the Court on said motion.

"Said cause was heard by agreement on oral testimony on January 17, 1963, and time allowed for briefing and is now before the Court for final determination.

"The record in this cause reveals that an original bill was filed by certain named land owners and tax payers in Lincoln County, Tennessee, against said Lincoln County, the County Judge thereof, and the Trustee of the county. The bill alleges that it was filed by complainants on behalf of themselves and all other land owners and tax payers of the county.

"It was charged in the bill that said county of Lincoln retained the services of a land appraising firm for the purpose of making appraisals of all real property located within the county for the year 1961. In effect the bill charges that said appraisal firm usurped the powers and duties of the duly elected Tax Assessor of the county and proceeded to assess for taxation all of the real property of the county, and that for the year 1961 the Tax Assessor did not perform his duties as required by law and, consequently, no legal assessment for said year of 1961 resulted. The bill sought a general declaration of rights of the parties and a specific declaration that taxes had not been assessed for the year 1961. Temporary injunctions were sought and obtained

against certain officials of the county preventing the collection of taxes based on the alleged assessments of the appraisal firm.

"This original bill was contested by the defendants by certain pleadings filed in the record. The cause proceeded to a final hearing on said original bill and the pleadings by the defendants to a final decree on May 15, 1962. It was adjudged by said decree that the 1961 assessments of property within the county were invalid.

"On June 28, 1962, the complainants filed their Supplemental Bill charging that after the entry of the decree aforesaid the Quarterly County Court of Lincoln County at a called session undertook by resolution to declare the assessment roll theretofore declared invalid by the Court to be the legal tax assessment for Lincoln County for the year 1961. At the same session the Quarterly Court adopted another resolution convening the County Board of Equalization of said county into session between the dates of May 28, 1962 and July 5, 1962. Said resolution exhibited to the supplemental bill provided an opportunity for any and all tax payers to appear before said Board to be heard on their individual assessments.

"The supplemental bill sought to have the Court declare the rights of the parties, including that of tax payers, to be heard by the Board of Equalization upon their 1961 assessments. Temporary injunctions were granted upon the prayer of the supplemental bill enjoining the County Judge from influencing the Board of Equalization in the discharge of its duties and enjoining the County Trustee from collecting taxes based

upon the Quarterly Court assessment for 1961. An injunction was also obtained enjoining the County Board of Equalization from refusing to hear any taxpayer regarding his 1961 assessment, as well as an injunction prohibiting the certification of any assessment roll for said year 1961.

"All defendants filed answers to the supplemental bill. The general defense made to the supplemental bill by said answers averred justification of the action of the Quarterly Court under the provisions of Section 67-1220 TCA. Said answers also put in issue the right to the injunctions sought, denying the allegations made as a basis for same.

"The issue in this cause must be determined on the basis of Section 67-1220 TCA. Said section reads as follows:

" 'In all cases where any taxes or assessments may be set aside or declared void by any court by reason of any irregularity or neglect to comply with the law in the proceedings, or by reason of the illegality of the act constituting the power or authority, to assess and levy such taxes or assessments, or for want of authority in the board or authority acting in lieu of the county courts, or the duly authorized and legally constituted authorities of the state for state and county purposes, and such other purposes as may be authorized by law, and said taxes still remain unpaid, the county court of any county, whenever such taxes or assessments have been made or attempted to be made, shall have the power to reassess back taxes upon any lot or parcel of lots or parcels of land subject to or chargeable with taxes for state and county purposes, and relevy the same, and the said reassessment and levies for said

purposes shall be and remain liens upon said lots or parcels of land, with interest from the date when the said taxes were properly leviable and assessable where such original assessments remain due and unpaid.'

"It is insisted by the defendants that the declaration of the invalidity of the 1961 assessment, as heretofore decreed by the Court, makes said law applicable. While the Court does not understand that the complainants concede that said section of the Code applies to the situation involved, but said complainants do insist that said law was not properly applied by the Quarterly Court of Lincoln County. Said complainants strenuously insist that the Quarterly Court did not in fact 'assess' the property of the county in its action resulting in the resolution exhibited to the supplements bill in this cause. The substance of this attack is that said Quarterly Court without consideration of individual assessments gave blanket approval to the appraisals of the firm previously retained by the county for that purpose.

"It should be determined, first, whether Section 67-1220, TCA, authorizes the Quarterly County Court to provide an assessment roll of all the taxable property within the county under the circumstances presented by the record in this cause. If an affirmative conclusion can be reached in this respect, then the secondary proposition of whether the provisions of said code section have been properly applied must be determined.

"The right to invoke the Acts of 1873, Chapter 40, codified into Section 67-1220 TCA, and the procedure adopted in the attempt to apply said law to the facts in this cause have been ably debated by counsel. *Neither*

*counsel nor the Court has been aided in a proper con-
clusion by any decision of the Appellate Courts apply-
ing the principles involved in said section of the law.
It is evident that this litigation presents a question of
first impression. For this reason and because of the
far reaching effect and the great importance of the
issue involved, the Court has given this matter a very
careful examination.*

█ "It is the considered opinion of this Court that
under the provisions of Section 67-1220, TCA, the
Quarterly County Court of Lincoln County was author-
ized to make not only individual assessments, but to
provide an entire assessment roll for the county for the
year 1961. Since under assessment procedure in Ten-
nessee real property is valued for assessment purposes
only in the odd years, it necessarily follows that in
1961 assessment roll of real property will become such
roll for 1962.

"It is strenuously urged that the Quarterly Court in
the passage of the resolution, exhibit No. 1 to the sup-
plemental bill, did not carry out the meaning of the pro-
visions of said Section 67-1220, TCA. It is contended
that said Quarterly Court gave a blanket approval of
the valuations furnished by the appraisal firm and that
such was done without investigation or consideration
of individual parcels of property. In other words, it is
insisted that the Quarterly Court in its action had no
basic standard in making the assessments.

"The proof introduced on the hearing, coupled with
the lack of testimony to the contrary, seems to estab-
lish that the Quarterly Court did in fact accept the roll
of assessments furnished by the appraising firm. There

was testimony that some 8,000 parcels of property had been assessed and placed on the roll which the Quarterly Court adopted. There was also testimony that the Court members were not furnished-with copies of such assessment roll, and there was no effort to consider the values of the individual parcels of property. There was an attendance of a number of residents of the county presumed to be property owners. It appears that all those in attendance who desired to be heard were given an opportunity to speak, and some five or six citizens availed themselves of this opportunity to address the Court. One of the members of the Quarterly Court in testifying on the hearing in this cause stated that he did not know the contents of the assessment roll from any information at the meeting of the Quarterly Court. It was also established that no formal notice had been given to the individual tax payers prior to the meeting of the Quarterly Court on May 22, 1962. It is shown that information in general was given by newspaper notices and by word of mouth which seems to demonstrate that there was a general knowledge that this meeting would be held. The Court is convinced that a large segment of the tax payers of Lincoln County knew of this meeting and the purposes for which it was being held. A copy of the Lincoln County News, a weekly newspaper published in Fayetteville, of the date of May 17, 1962, was introduced. This issue of the newspaper carried a front page display article relative to this matter. Said article included a discussion and quotations from the decree of the Chancellor declaring the 1961 assessment invalid. The same newspaper article carried the information that a special session of the Court would be held on Tuesday, May 22, for the purpose of adopting new assessments and property

valuations for the year 1961. It cannot be said, therefore, that this meeting of the Quarterly Court was a clandestine assembly. In fact, the Court does not understand that complainants so insist. As the Court understands their theory, complainants urge that the procedure used in making the assessments did not comply with the mandates of Section 67-1220, TCA. It could be well said that it would have been impossible for the Quarterly Court of Lincoln County to have given individual consideration to the assessment of 8,000 parcels of property involving a large number of owners thereof in one-half day's session.

"Said Section 67-1220, TCA, does not define the method by which said assessments shall be made by the Quarterly Court, nor does it establish standards by which the purposes of the Act may be accomplished by said body.

"It is provided in Section 67-1706, TCA, that the Quarterly County Court of a county is authorized to contract with individuals, firms or corporations to render advice and assistance to the local Tax Assessor and Board of Equalization in the assessment and equalization of taxes. If such assistance is legally available to the Tax Assessor, the Court can see no reason why such would not be legally available to the Quarterly Court acting in the same capacity as the Tax Assessor under the provisions of Section 67-1220, TCA.

"As a matter of policy the unquestioned acceptance of the advice and assistance rendered by such an individual or firm might be debatable. The wisdom of the acceptance of the advice and assistance of the appraisal firm by the members of the Quarterly Court of Lincoln County is not subject to review by this

Court. If the act of the members of said Quarterly Court was one of error in judgment or policy, such members are answerable to constituents whom they represent. The Court can find no violation of a legal mandate in their action resulting in the resolution adopted on May 22, 1962. Therefore, it is the opinion of the Court that the act of said Quarterly Court on that date created a legal assessment of the taxable property in Lincoln County for the year 1961, and by operation of law a legal assessment of the real property for the year 1962.

"It is next insisted by the complainants in their supplemental bill that this Court should declare the action of the Board of Equalization of Lincoln County to be void and for this reason enjoin the collection of any taxes for the year 1961 pending a meeting of said Board and the performance of its legal duties with respect to the 1961 assessment.

"Section 67-809, TCA, provides as follows:

" 'When the County Board of Equalizers shall have determined the matters of equalization and values before it and within its jurisdiction, such action shall be final, except insofar as the same may be revised or changed by the State Board of Equalization.'

██ "This statute has been before the Courts in cases where aggrieved tax payers have sought relief from unfavorable action by a County Board of Equalization. The Court has examined these cases and applied the reasoning and holdings to the situation existing in the instant cause. It seems will settled that this Court has no authority to review the action of the County Board of Equalization of Lincoln County unless the record

in this cause justifies a conclusion that said Board exceeded its jurisdiction, failed to observe statutory requirements, or acted fraudulently. Tomlinson v. Board of Equalization, 88 Tenn. 1 [12 S.W. 414, 6 L.R.A. 207]; Treadwell Realty Company v. City of Memphis [173 Tenn. 168] 116 S.W.(2d) 997.

"Other cases are cited in the above mentioned decisions, and the general principle here involved is discussed by the Appellate Courts.

■ "By an examination of the cases determined by the Supreme Court on this question, it can be seen that a local Board of Tax Equalization is vested with broad jurisdictional powers unhampered by many restrictions applicable to other tribunals.

"It may be said that the Board of Equalization of Lincoln County for a short interval acted in a rather arbitrary manner regarding the 1961 assessments. However, this was soon corrected and tax payers given an opportunity to be heard relative to these assessments. The motive of said Board, while based upon its sense of fairness, was erroneous. Even from the Board's action in this respect an appeal could have been had to the State Board of Equalization for review.

■ "The Court is unable to conclude upon the facts of the case at bar and the rules of law applicable that this Court has jurisdiction to decree relative to the action of the Board of Equalization of Lincoln County. However, the Court does make bold to suggest that if there are yet tax payers who have not had an opportunity to be heard relative to their assessments, that they be given such opportunity now by the officials of the county.

"It results, therefore, that the supplemental bill filed in this cause on June 28, 1962, will be dismissed and the injunctions issued thereupon will be dissolved. The costs of the proceedings upon the supplemental bill will be adjudicated against Lincoln County.

"SO DECREE, provide for exceptions and appeal with thirty days allowed for perfecting the same and sixty days for the preparation and filing of a bill of exceptions.

"This FEBRUARY 26, 1963.

"Robert L. Keele/s/

CHANCELLOR"

## II

### Assignments of Error

The four assignments of error are to the effect; (1) That the lower Court erred in holding that the Quarterly County Court was authorized under T.C.A. Sec. 67-1220 to assess all the real property in the County without giving notice that assessments would be raised and without giving any consideration to values; (2) That the Court erred in holding that it was without authority to review the action of the County Board of Equalization as developed by the proof in this case; (3) That the Court erred in holding that the County Board of Equalization gave the taxpayers an opportunity to be heard in the 1961 assessments; (4) That the Court erred in failing to decree that the assessments made under the authority of T.C.A. Sec. 67-1220, if valid, bear interest only, and are not subject to the penalty provided by T.C.A. Sec. 67-1105.

## III

We agree with the finding of facts and the conclusions of law reached by the Chancellor in the foregoing opinion. Therefore, it is unnecessary for us to discuss the assignments of error seriatum since we think the reasoning of the Chancellor very well answers the questions raised.

The following propositions of law relied on by appellees are applicable and controlling;

1. The Quarterly County Court, under T.C.A. Sec. 67-1220, has authority to re-assess property when the original assessment has been judicially declared void and such Statute does not require that notice be given to each individual taxpayer before the Court makes such re-assessment.

2. Under Section 67-1706 T.C.A. the Quarterly County Court has authority to employ professional appraisers to make valuations of property in the County which valuations are to be used as recommendations to the Tax Assessor and to the County Board of Equalization, and, where the Quarterly County Court makes a reassessment under Section 67-1220 T.C.A., it may act upon the recommendations of professional appraisers duly employed.

3. As was held in Treadwell Realty Co. v. City of Memphis, 173 Tenn. 168, 116 S.W.(2d) 997, and Tomlinson v. Board of Equalization, 88 Tenn. 1, 12 S.W. 414, 6 L.R.A. 207, it is competent for the Legislature to provide that the findings of a County Board of Equalization shall be final so long as the Board acts within its jurisdiction, observes statutory requirements and there is no fraud. But this is subject to review by the State Board of Equalization. Furthermore, a Board of Equalization may

exercise a very wide discretion in hearing evidence and it may refuse to examine witnesses offered by a taxpayer.

■■ 4. When property owners appear before a County Board of Equalization and the matter is determined by that Board, said property owners cannot successfully complain in Court of the action of the County Board where they have failed to carry the matter before the State Board for review. Treadwell Realty Co. v. City of Memphis, supra; Mossy Creek Bank v. Jefferson County, 153 Tenn. 332, 284 S.W. 64.

## IV

The fourth assignment of error is that the Court failed to decree that the assessments made under the authority of T.C.A. Sec. 67-1220, if valid, bear interest only, and are not subject to the penalty provided by T.C.A. Sec. 67-1105.

■■■■■ While we are in sympathy with the proposition that these taxpayers should not be onerated with a penalty because they honestly undertook to have the question of the validity of the assessment of property in 1961 reviewed by the Courts, we feel compelled to agree with the Chancellor that this question was not raised in the pleadings nor presented to the Court below, hence, we are unable to afford such relief on appeal.

## V

For the foregoing reasons the assignments of error are overruled and the judgment of the Trial Court is in all things affirmed. This judgment is rendered without prejudice to the rights of the complainants to seek relief in the Trial Court from penalties referred to in assignment No. 4, hereinabove.

The costs below will abide the judgment of the Chancellor. The costs on appeal will be divided equally between complainants and defendant Lincoln County.

Affirmed and remanded.

Humphreys and Chattin, JJ., concur.